**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

_____
                                                        :
                                                        :
                                                        :          21-MC-101 (AKH)
IN RE SEPTEMBER 11 LITIGATION          :          (relates to 04-CV-7318)
                                                        :
                                                        :
_____   :


**CANTOR FITZGERALD PLAINTIFFS' MEMORANDUM OF LAW IN**
**<u>SUPPORT OF THEIR MOTION TO AMEND THEIR COMPLAINT</u>**

**SAUL EWING LLP**

Candice Toll Aaron, Esq.
John F. Stoviak, Esq.
Shiloh D. Theberge, Esq.
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Phone: 215.972.7777
Fax: 215.972.7725
caaron@saul.com
jstoviak@saul.com
stheberge@saul.com

# TABLE OF CONTENTS

I.     INTRODUCTION.................................................................................................1

II.    PRELIMINARY STATEMENT ..........................................................................1

III.   STATEMENT OF RELEVANT FACTS...........................................................4

      A.    Cantor's Original Complaint...................................................................4

      B.    Claims Against Globe In This Litigation ...............................................7

      C.    Cantor's Dismissal Of Silverstein And Riggs........................................9

      D.    Cantor's Proposed Amended Complaint..................................................9

IV.   ARGUMENT ....................................................................................................11

      A.    Leave to Amend Should be Freely Granted because there is no Prejudice to Any Party ........................................................................11

      B.    Cantor's Claims Against Globe Relate Back to the Original Complaint .......12

      C.    Under New York's Relation Back Standard, Cantor's Claims Against Globe Relate Back To Its Original Complaint....................................14

            1.    Cantor's Claims Against Globe Arise Out Of The Hijacking And Crash Of American Flight 11 As Alleged In Cantor's Original Complaint ..................................................................................14

            2.    Globe Had Notice Of The Claims Against It And Was In Unity Of Interest With American...................................................................15

            3.    Globe Knew About The Claims Against It Before Cantor Filed Its Original Complaint And Should Have Known That Cantor's Failure To Name Globe Was An Oversight...........................................17

V.     CONCLUSION ................................................................................................18

# TABLE OF AUTHORITIES

## FEDERAL CASES

Beck v. Consolidated Rail Corp., 394 F.Supp.2d 632 (S.D.N.Y. 2005).....................15, 16, 17, 18

Blakeslee v. Royal Ins. Co., No. 93 CIV. 1633, 1998 WL 209623 (S.D.N.Y. April 29, 1998) ..........................................................................................................................17

Corcoran v. New York Power Auth., 202 F.3d 530 (2d Cir. 1999)..............................................13

Foman v. Davis, 371 U.S. 178 (1962) ..................................................................................11, 12

Hunt v. Dart, No. 07 C 6003, 2009 WL 1162133 (N.D. Ill. April 30, 2009) ..............................13

In re September 11 Litigation, 280 F. Supp. 2d 279 (S.D.N.Y. 2003) ...........................................9

Kamerman v. Pako Co., Inc., 75 F.R.D. 673 (S.D.N.Y. 1977)....................................................15

Laureano v. Goord, No. 06 Civ. 7845(SHS)(RLE), 2007 WL 2826649 (S.D.N.Y. Aug. 31, 2007) .....................................................................................................................13

Lieber v. Village Spring Valley, 40 F.Supp.2d 525 (S.D.N.Y.1999) ...........................................12

Mabry v. New York City Dept. Corr., No. 05 Civ. 8133, 2008 WL 619003 (S.D.N.Y. Mar. 7, 2008)......................................................................................................12, 18

Middle Atlantic Utilities Co. v. S. M. W. Development Corp., 392 F.2d 380 (2d Cir. 1968) ............................................................................................................................11

Murphy v. West, 533 F.Supp.2d 312 (W.D.N.Y. 2008)..............................................................13

Sanchez v. United Airlines, Inc. et al., 03-CV-7084 (Sept. 11, 2003)............................................8

Sloane v. Town Greenburgh, No. 01 Civ. 11551(MBM), 2005 WL 1837441 (S.D.N.Y. July 27, 2005)...............................................................................................................14, 16

State Teachers Ret. Bd. v. Fluor Corp., 654 F.2d 843 (2d Cir. 1981) ..........................................11

## STATE CASES

Brock v. Bua, 83 A.D.2d 61 (N.Y. App. Div. 2d Dep't 1981) .....................................................15

Brown v. Aurora Sys. Inc., 723 N.Y.S.2d 793 (App. Div. 2001).................................................17

Buran v. Coupal, 661 N.E.2d 978 (N.Y. 1995) ...........................................................3, 14, 15, 17

Hemmings v. St. Marks Hous. Assoc., 169 Misc.2d 155 (N.Y. Sup. Ct. 1996)...........................16

## Federal Statutes

Fed. R. Civ. P. 15 ...................................................................................................................2

Fed. R. Civ. P. 15(a)(2) ......................................................................................................11

Fed. R. Civ. P. 15(c)(1) ......................................................................................................12

Fed. R. Civ. P. 15(c)(1)(A) .......................................................................................3, 12, 13, 14

Fed. R. Civ. P. 15(c)(1)(C) ............................................................................................13, 14

## State Statutes

CPLR § 203 ........................................................................................................................14

CPLR § 214 ........................................................................................................................13

## Miscellaneous

6 Charles Allen Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and
Procedure: Civil 2d, § 1487 (1990 & 2007 Supp.) ...................................................11

## I.    INTRODUCTION

Plaintiffs Cantor Fitzgerald & Co., Cantor Fitzgerald Associates, L.P., Cantor Fitzgerald Brokerage, L.P., Cantor Fitzgerald Europe, Cantor Fitzgerald International, Cantor Fitzgerald Partners, Cantor Fitzgerald Securities, Cantor Fitzgerald, L.P., Cantor Index Limited, CO2e.com, LLC, eSpeed Government Securities, Inc., eSpeed, Inc., eSpeed Securities, Inc., and TradeSpark, L.P (collectively "Cantor") submit this memorandum of law in support of their motion to amend their Complaint to assert claims of negligence identical to previously asserted claims against Globe Aviation Services Corporation, Globe Airport Security Services, Inc., Burns International Security Services Corporation, Burns International Services Corp., Pinkerton's Inc., and Securitas A.B. (collectively "Globe").  By way of this motion, Cantor also seeks leave to remove allegations and claims against Riggs National Corporation, Riggs Bank, N.A., and Silverstein Properties, Inc.

The motion to amend is a result of the Court's request, during a status conference on July 29, 2009, that the parties clean up the defendants on the docket in this action.  To avoid motion practice, on August 19, 2009, Cantor requested, via counsel for Globe, that Globe consent be added as defendants to Cantor's Amended Complaint.  On August 29, 2009, counsel for Globe declined, making this motion necessary.

## II.    PRELIMINARY STATEMENT

On September 11, 2001, terrorists took control of American Flight 11 and crashed it into Tower One of the World Trade Center where Cantor's world headquarters was located on floors 100-105.  The crash of Flight 11 caused Tower One to collapse, killing 658 of Cantor's approximately 1000 employees and destroying all of Cantor's physical property contained in Tower One.

In September 2004, Cantor timely filed a Complaint against, among others, American Airlines and the Massachusetts Port Authority, alleging that they were negligent in their operation, implementation, and supervision of security procedures at Logan International Airport ("Logan"), where Flight 11 originated. Cantor did not name Globe as a Defendant, but alleged that American Airlines and the Massachusetts Port Authority were liable because of the "Security Company Defendants'" negligent operation of passenger security checkpoints. Cantor's failure to name Globe was an *oversight* and did not result in any strategic advantage to Cantor. Cantor now moves to correct its pleading to add Globe as a Defendant. Cantor's Proposed Amended Complaint simply incorporates the exact same allegations and claims against Globe that are contained in the Sixth Amended Master Property Complaint Against Airline and Security Company Defendants, which Globe has already answered.

Cantor's Motion to Amend should be granted because there is no conceivable prejudice to Globe. Under Fed. R. Civ. P. 15, amendments should be liberally granted. The key factor in deciding a motion to amend is whether the amendment would prejudice the new defendant. Here, there is no prejudice to Globe. As early as 2002, various Plaintiffs in this litigation, including other World Trade Center tenants, asserted negligence claims against Globe based on its security operations at Logan. Indeed, the first Property Plaintiffs' Master Liability Complaint was filed in December 2002 and incorporated these negligence claims against Globe. Globe has answered all six of the Property Plaintiffs' amended Master Liability Complaints on the merits. More importantly, from the beginning of this litigation, Globe has aggressively defended against Plaintiffs' allegations of negligence. Globe cannot argue, therefore, that it will suffer any prejudice from Cantor's proposed amendments, which mirror the allegations contained in the Master Complaints.

Additionally, Cantor's claims against Globe are not time-barred because they relate back to Cantor's original Complaint. Pursuant to Fed. R. Civ. P. 15(c)(1)(A), New York's relation back standard applies to Cantor's claims. That standard permits relation back if: (1) the new claims arise out of the same occurrence as alleged in the original complaint; (2) the new defendant is in unity of interest with an original defendant such that the new defendant is not prejudiced by the amendment; and (3) the new defendant should have known that but for the plaintiff's mistake, it would have been named as a defendant. Buran v. Coupal, 661 N.E.2d 978, 981 (N.Y. 1995).

These elements are easily satisfied here. First, Cantor's claims against Globe arise out of the same negligent security procedures that Cantor alleged in its original Complaint, the negligent screening of passengers at Logan. Second, Globe and American Airlines are in unity of interest because American Airlines contracted with Globe to provide security services at Logan. There is no prejudice to Globe because Globe actively defended against identical negligence claims before Cantor filed its original Complaint. Third, Globe should have known that Cantor's mistake was an oversight because Globe knew that other Plaintiffs in this litigation had already sued Globe, and because there is no strategic advantage for Cantor to have omitted Globe. Thus, Cantor's claims against Globe are timely because they relate back to Cantor's original Complaint.

Finally, Cantor's original Complaint asserted claims against Riggs National Corporation, Riggs Bank, N.A., and Silverstein Properties, Inc. On January 31, 2005, this Court entered a Stipulated Order dismissing these Defendants pursuant to agreements between them and Cantor. Cantor now seeks leave to amend its Complaint to conform to these dismissals by removing all

allegations and claims against these Defendants. These amendments will not prejudice any party remaining in this litigation.

Because Cantor's proposed amendments will not prejudice any party to this litigation, Cantor's motion to amend its Complaint should be granted in its entirety.

## III.    STATEMENT OF RELEVANT FACTS

### A.    Cantor's Original Complaint

Cantor timely filed its original Complaint on September 13, 2004 (Docket No. 04-CV-07318) ("Original Complaint"). (Attached as Ex. A to the Declaration of John F. Stoviak, dated September 29, 2009 ("Stoviak Decl.")). The Original Complaint named six Defendants: (1) American Airlines, Inc.; (2) AMR Corporation; (3) Massachusetts Port Authority ("MassPort"); (4) Riggs National Corporation; (5) Riggs Bank, N.A.; and (6) Silverstein Properties, Inc. ("Silverstein"). (Original Complaint ¶¶ 22-31). The Original Complaint alleged that American Airlines, Inc. is a wholly owned subsidiary of AMR Corporation (collectively "American"). (Id. ¶ 24). It also alleged that Riggs Bank, N.A. is the principal subsidiary of Riggs National Corporation (collectively "Riggs"). (Id. ¶ 28).

Cantor asserted the following claims in its Original Complaint: (1) negligence against American and MassPort regarding their operation of and responsibility for security at Logan (Counts One and Four); (2) negligent selection against American and MassPort regarding their hiring of security companies to operate security at Logan (Count Two); (3) negligence based on *res ispa loquitor* against American and MassPort (Count Three); (4) negligence *per se* against American and MassPort (Count Five); (5) federal claims against Riggs regarding its handling of funds used to finance the 9/11 terrorist attacks (Count Six); (6) negligence against Riggs (Count Seven); (7) negligence against Silverstein (Count Eight); and (8) punitive damages against all Defendants (Count Nine).

Specifically, Cantor's Original Complaint alleged that on September 11, 2001, hijackers penetrated the airline security and airport security checkpoints at Logan and were permitted to board Flight 11 carrying dangerous and prohibited weapons. (Original Complaint ¶ 52). The hijackers ultimately entered the unprotected cockpit of Flight 11 and took control of the aircraft. (Id. ¶ 52). The terrorists intentionally crashed Flight 11 into Tower One of the World Trade Center, killing 658 of Cantor's approximately 1,000 employees and destroying Cantor's world headquarters.

Cantor's Original Complaint alleges that American and MassPort were responsible for supervising the security checkpoints at Logan, and that they knew that the hijacking of an airliner was a potential danger. (Original Complaint ¶¶ 41, 45-47). In fact, American and its agents received a 1999 report from the FAA's Office of Civil Aviation Security, which advised that Osama Bin Laden had reportedly threatened to "bring down an airliner, or hijack an airliner to humiliate the United States." (Id. ¶ 45). Based on that report and other information, including the 1993 terrorist attack on the World Trade Center, it was "reasonably foreseeable that if terrorists gained control of a commercial airliner, such as Flight 11, . . . the terrorists would attempt to cause it to crash into the World Trade Center, and defendants consequently had a duty to take effective measures to counter that threat and risk." (Id. ¶ 48). Thus, Cantor alleged that "prior to September 11, 2001, [American and MassPort] knew or should have known about numerous documented and reported security breaches involving unauthorized access to secure areas . . . and warnings that security was at risk and the passenger and carry-on baggage screening system was vulnerable." (Id. ¶ 49).

Discovery has revealed that Globe was primarily responsible for passenger security checkpoints at Logan and that Globe was not effectively operating them. Joseph M. Lawless,

who was the Director of Public Safety at MassPort on 9/11, testified that pursuant to federal aviation regulations, the airlines and their security companies were responsible for passenger security checkpoints. (Deposition Transcript of Joseph M. Lawless dated March 30, 2007, 11:21:17 10-11:25:58 5, attached as Ex. B to the Stoviak Decl.). According to Mr. Lawless, this created a security concern. (Id.) In fact, Mr. Lawless described the security checkpoints operated by Globe as the "weakest link" in Logan's security because "airlines are not in [the] security business," they "award security contracts service to [the] lowest bidder," and security employees are "generally low wage, low skilled" personnel. (MassPort – Impact Report Aviation Public Safety – State of Security for Logan International Airport, presented in 1997 by, *inter alia*, Joseph M. Lawless, attached as Ex. C to the Stoviak Decl.; see also Deposition Transcript of Joseph M. Lawless dated March 30, 2007, 11:21:17 10-11:25:58 5, attached as Ex. B to the Stoviak Decl.).

Cantor's Original Complaint did not name Globe or any "Security Company Defendants" as Defendants. Nevertheless, the allegations of Cantor's Original Complaint put Globe on notice of the potential claims against it. Cantor alleged that both American and MassPort had a duty to "safeguard the subject aircraft and to prevent hijackers from breaching the airline and airport security system and carrying dangerous weapons aboard the subject aircraft." (Id. ¶ 126). American and MassPort improperly delegated this responsibility by subcontracting with various unnamed "Security Company Defendants." (Id.¶ 127). Cantor further alleged that the "Security Company Defendants'" negligent operation and supervision of the security checkpoints allowed the terrorists to board Flight 11. (Id. ¶¶ 125-30). Thus, Globe was on fair notice of the potential claims against it because Cantor's claims allegations American and MassPort were derivative of Globe's negligence. Indeed, Cantor's omission of Globe was an oversight, and it was not done

in bad faith or to obtain a strategic advantage. (Affidavit of Michael Lampert, Esq., dated September 29, 2009, attached as Ex. D to the Stoviak Decl.).

**B.      Claims Against Globe In This Litigation**

The procedural history of this consolidated litigation also put Globe on notice of Cantor's potential claims against it. Globe was named as a Defendant stemming from its negligence at Logan at least as early as April 2002, when Plaintiffs World Trade Farmers Market, Inc., Adem Arici, and Omer Ipek (collectively "World Farmers") sued Globe Airport Security Services, Inc. (Complaint filed April 18, 2002, 02-CV-2987, attached as Ex. E to the Stoviak Decl.). Like Cantor, World Farmers was a tenant in the World Trade Center and brought claims against Globe for property damage because of Globe's negligent operation of security checkpoints at Logan. (Id. ¶¶ 5, 53-62). World Farmers original claims are almost identical to the claims in Cantor's Proposed Amended Complaint.[1] The only other World Trade Center tenant Plaintiffs in this litigation filed their Complaint on September 8, 2004, and also asserted negligence claims against Globe.[2] (Complaint filed September 8, 2004, 04-CV-7136, attached as Ex. F to the Stoviak Decl.).

Several representatives of individuals who died in the World Trade Center also brought negligence claims against Globe before Cantor filed its Original Complaint. For example, on September 9, 2002, Allan Hackel filed a wrongful death claim against Globe alleging that Globe "operated, controlled, manned, supervised and oversaw the security systems through which the terrorists penetrated" and that Globe's negligent operation of security systems was the proximate cause of the decedents' death. (Complaint filed on September 9, 2002, 02-CV-7134, ¶ 22,

_____

[1] The only exception being that World Farmers did not sue Globe Airport Security Services, Inc.'s affiliate and parent companies.

attached as Ex. G to the Stoviak Decl.); see also Sanchez v. United Airlines, Inc. et al., (Complaint filed on September 11, 2003, 03-CV-7084, attached as Ex. H to the Stoviak Decl.). (asserting wrongful death claim based on negligence against Globe). These complaints assert the same negligence claims against Globe that Cantor now seeks to add.

Furthermore, on July 24, 2002, more than two years before Cantor filed its Original Complaint, this Court consolidated all actions stemming from the terrorist attacks of September 11, 2001 that were "pending *or hereinafter filed* . . . against any airline and/or airline security company, including American Airlines, Inc. . . . [and] . . . *Globe Aviation Services Corp*." (Provisional Order, 01-CV-11628, dated July 24, 2002, attached as Ex. I to the Stoviak Decl.) (emphasis added). This consolidation, by its express terms, put Globe on notice of potential *future* claims against it in this litigation. On December 11, 2002, certain property damage Plaintiffs filed the first consolidated Property Plaintiffs' Master Liability Complaint. That Complaint asserted claims against Globe based on its negligent operation of security at Logan. (Property Plaintiffs' Master Liability Complaint, 21-MC-97, ¶ 126, attached as Ex. J to the Stoviak Decl.).

When Cantor timely filed its Original Complaint, the Property Plaintiffs' Third Amended Master Liability Complaint was the operative pleading. That Complaint included negligence claims against Globe. (Property Plaintiffs' Third Amended Master Liability Complaint filed on March 31, 2004, 21-CV-97, attached as Ex. K to the Stoviak Decl.). The Property Plaintiffs' Fourth Amended Master Liability Complaint, which Amended the Third Amended Master Liability Complaint to incorporate Cantor's Original Complaint, also contains negligence claims against Globe. (Property Plaintiffs' Fourth Amended Master Liability Complaint filed on

---

[2] These Plaintiffs are: Barcley Dwyer Co. Inc., Karoon Capital Management, Inc., Koudis International, Inc., N.S. Windows LLC, Tower Computer Services, Inc., and Wall Street Realty Capital, Inc.

January 18, 2005, 21-CV-97, attached as Ex. L to the Stoviak Decl.). All subsequent Master Complaints contain negligence claims against Globe. Globe has answered and defended against all of these Complaints on the merits.

Indeed, in January 2003, before Cantor had filed its Original Complaint, Globe moved to dismiss all "claims against the Aviation Defendants in the five Master Complaints and their corresponding individual complaints which allege wrongful death, personal injury or property damage relating to the September 11, 2001 terrorist attacks and sustained other than on the aircraft seized by the terrorists." (Memorandum of Law in Support of Motion filed on January 17, 2003, 21-CV-97, relevant pages attached as Ex. M to the Stoviak Decl.). Globe argued that it owed no duty to "ground defendants" and that all negligence claims by those defendants should be dismissed. This court rejected Globe's position on the merits. In re September 11 Litigation, 280 F. Supp. 2d 279 (S.D.N.Y. 2003).

## C.     Cantor's Dismissal Of Silverstein And Riggs

On January 31, 2005, this Court "so ordered" stipulations of dismissal without prejudice regarding Cantor's claims against Riggs and Silverstein. (Stipulated Orders filed on January 31, 2005, attached as Ex. N to the Stoviak Decl.). These stipulations were based on separate agreements between Cantor and Silverstein and Cantor and Riggs. Although, pursuant to those agreements, Cantor retains the right to reinstate claims against Riggs and Silverstein, it has not done so. Cantor's claims against Riggs and Silverstein are not incorporated in the current version of the Master Complaint.

## D.     Cantor's Proposed Amended Complaint

Cantor's Amended Complaint includes two revisions to the Original Complaint: (1) it adds claims against Globe; and (2) it removes all allegations and claims against Riggs and

Silverstein.  (A copy of Cantor's Proposed Amended Complaint is attached as Ex. O to the Stoviak Decl.).

Regarding Globe, Cantor's new allegations and claims are identical to the allegations and claims asserted against Globe and its affiliate companies in the Sixth Amended Master Property Complaint.  Cantor alleges that American and MassPort contracted with Globe to operate passenger screening checkpoints at Logan and that Globe was negligent in its screening of the passengers who boarded Flight 11.  (Amended Complaint ¶¶ 58-64).  Cantor does not assert any new factual allegations or any new theories of liability regarding Globe.  The Proposed Amended Complaint simply incorporates the allegations from the Sixth Amended Master Property Complaint regarding Globe, (id. ¶¶ 23-27, 35-57), and adds Globe as a named Defendant regarding Cantor's previously asserted claims for negligence (Count One), negligence based on *res ipsa loquitur* (Count Three), and negligence *per se* (Count Five).

Cantor asserts these claims against the following new Defendants:  Globe Aviation Services Corporation, Globe Airport Security Services, Inc., Burns International Security Services Corporation, Burns International Services Corp., Pinkerton's Inc., and Securitas A.B. (Amended Complaint ¶¶ 23-27).  Globe Aviation Services Corporation was in the business of owning, operating, managing, supervising and maintaining passenger screening and security systems for various airlines, including American flights departing from Logan.  (Id. ¶ 23).  Globe Airport Security Services, Inc. is a wholly owned subsidiary of Globe Aviation Services Corporation.  Burns International Security Services Corporation and Burns International Service Corp. (collectively "Burns") are the parent corporations of and exercised control over their wholly-owned subsidiary, Globe Aviation Services Corporation.  (Id. ¶ 25).  As a result, Burns is liable for the acts and omissions of Globe Aviation Services Corporation.   (Id. ¶ 25).

Pinkerton's, Inc. is the parent corporation of Burns and exercised control over Burns and Burns' wholly-owned subsidiary, Globe Aviations Services Corporation. (Id. ¶ 26). As a result, Pinkerton's, Inc. is liable for the acts and omissions of Burns and Globe Aviation Services Corporation. (Id. ¶ 26). Securitas A.B. is the parent corporation of Pinkerton's, Inc. and exercised control over it indirect subsidiaries, Globe Aviation Services Corporation, Burns, and Pinkerton's Inc. (Id. ¶ 27). As a result, Securitas is liable for the acts and omissions of Globe Aviation Services Corporation, Burns, and Pinkerton's Inc. (Id. ¶ 27).

Regarding Riggs and Silverstein, Cantor's Proposed Amended Complaint simply omits Counts Six through Eight and paragraphs 60-118 of the Original Complaint so as to conform the pleading to the stipulations of dismissal between Cantor, Riggs, and Silverstein.

## IV.     ARGUMENT

### A.     Leave to Amend Should be Freely Granted because there is no Prejudice to Any Party

Pursuant to Fed. R. Civ. P. 15(a)(2), a "court should freely give leave [to amend] when justice so requires." A party opposing a motion for leave to amend a pleading bears the burden of demonstrating that amendment is improper. Foman v. Davis, 371 U.S. 178, 181 (1962). "Mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for the district court to deny the right to amend." State Teachers Ret. Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981); Middle Atlantic Utilities Co. v. S. M. W. Development Corp., 392 F.2d 380, 384 (2d Cir. 1968) ("unless the motion either was made in bad faith or will prejudice defendant, delay by itself is not enough to deny the requisite relief"); see also 6 Charles Allen Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 2d, § 1487, at 613 (1990 & 2007 Supp.) (stating that prejudice to the opposing party is "the most important factor" and "the most frequent reason for denying leave to amend"). Thus, absent a

showing of prejudice to the opposing party, leave to amend should ordinarily be granted. Foman, 371 U.S. at 182.

Cantor's proposed amendments do not prejudice any party. Globe has been on fair notice of the claims against it in this litigation since long before Cantor filed its Original Complaint. Globe has vigorously defended against these claims. Indeed, because of this Court's standing consolidation Order, Cantor's Original Complaint was included as part of the Property Plaintiffs' Fourth Master Liability Complaint, which contained the identical allegations against Globe that Cantor now seeks to add to its Original Complaint. Cantor's failure to add Globe was an oversight that resulted in no strategic advantage to Cantor and adding Globe at this time does not prejudice Globe in any way. Cantor should be permitted to correct this oversight and amend its pleading to properly name Globe as a Defendant.

Additionally, Cantor should be permitted to amend its pleading to remove claims against Riggs and Silverstein because these amendments conform to this Court's Stipulated Order and do not prejudice any party. Cantor's motion for leave to amend should be granted in its entirety.

### B. Cantor's Claims Against Globe Relate Back to the Original Complaint

Fed. R. Civ. P. 15(c)(1) provides that a plaintiff may amend a complaint to add a new defendant after the applicable statute of limitations has expired if the proposed amendment "relates back" to the plaintiff's timely filed complaint. Pursuant to Fed. R. Civ. P. 15(c)(1)(A), an amendment to a pleading relates back to the date of the original pleading when "the law that provides the applicable statute of limitations allows relation back." Courts have interpreted this to mean that if a plaintiff's claims are governed by a state statute of limitations and the "state's rules regarding relation back are less rigorous than the federal rules, state principles apply." Lieber v. Village Spring Valley, 40 F.Supp.2d 525, 532 (S.D.N.Y. 1999); see Mabry v. New York City Dept. Corr., No. 05-CV-8133, 2008 WL 619003 (S.D.N.Y. Mar. 7, 2008) (court

looked first to Fed R. Civ. P. 15(c)(1)(C) then to Fed. R. Civ. P. 15(c)(1)(A) to determine which standard was more forgiving in providing for amendment to add defendants); <u>Laureano v. Goord</u>, No. 06-CV-7845, 2007 WL 2826649, at *5 (S.D.N.Y. Aug. 31, 2007) (noting that "[w]hether a claim relates back should be analyzed under both federal and state law, and whichever law that affords a more forgiving principle of relation back should be utilized") (internal citations omitted)); <u>Hunt v. Dart</u>, No. 07-CV-6003, 2009 WL 1162133, at *3 n.4 (N.D. Ill. April 30, 2009) (positively citing New York law for proposition that the court must compare state and federal relation back principles to determine which is more favorable). Indeed, "if the applicable state law affords a more forgiving principle of relation back than the one provided in [the federal rule], it should be available to save the claim." <u>Murphy v. West</u>, 533 F.Supp.2d 312, 316 (W.D.N.Y. 2008).

This comparison of state and federal relation back principles employed by federal courts pursuant to Fed. R. Civ. P. 15(c)(1)(A) is consistent with the Advisory Committee's Note to the 1991 Amendment to Rule 15, which explains in pertinent part:

> [Rule 15(c)(1)(A) ] is new. It is intended to make it clear that ***the rule does not apply to preclude any relation back that may be permitted under the applicable limitations law.*** Generally, the applicable limitations law will be state law . . . ***Whatever may be the controlling body of limitations law, if that law affords a more forgiving principle of relation back than the one provided in this rule, it should be available to save the claim***.

Fed. R. Civ. P. 15 Advisory Committee's Note to 1991 Amendment (emphasis added).

Here, New York's three-year statute of limitations for property damage claims applies to Cantor's claims. CPLR § 214; <u>see</u> ATSSA § 408(b)(2) (claims under ATSSSA are governed by substantive law of state in which crash occurred); <u>Corcoran v. New York Power Auth.</u>, 202 F.3d 530, 537 (2d Cir. 1999) (holding that state statute of limitations must be applied where federal

statute creates federal cause of action but provides that "substantive law" of state where incident occurred applies). Thus, pursuant to Fed. R. Civ. P. 15(c)(1)(A), if New York's relation back standard would permit Cantor's proposed amendment, this Court must apply New York's standard rather than the federal standard provided in Fed. R. Civ. P. 15(c)(1)(C).

### C. Under New York's Relation Back Standard, Cantor's Claims Against Globe Relate Back To Its Original Complaint

A party seeking to add a new party pursuant to New York's relation back doctrine must establish the following:

> (i) the claims asserted against the new defendant arise "out of the same conduct, transaction or occurrence" as the claims asserted against defendants in the original complaint; (ii) the new defendant is "united in interest" with the original defendant such that he can be charged with notice of the original action and will not be prejudiced in maintaining a defense on its merits; and (iii) the new defendant knew or should have known that, but for a mistake by the plaintiff in naming the proper defendant, the action would have been brought against him as well.

Sloane v. Town Greenburgh, No. 01-CV-11551, 2005 WL 1837441, at *3 (S.D.N.Y. July 27, 2005) (citing Buran v. Coupal, 661 N.E.2d 978, 981 (N.Y. 1995)); see also CPLR § 203.

Cantor easily satisfies this test because: (1) Cantor's claims against Globe arise out of the hijacking and crash of Flight 11 as alleged in Cantor's Original Complaint; (2) Globe is united in interest with American, an original defendant, by virtue of a binding contract between American and Globe; and (3) Globe was aware of the claims against it in this action and, in fact, defended against those claims even before Cantor filed its Original Complaint.

### 1. Cantor's Claims Against Globe Arise Out Of The Hijacking And Crash Of American Flight 11 As Alleged In Cantor's Original Complaint

The first element of the New York relation back test is a liberal requirement. An amended pleading arises out of the same conduct, transaction or occurrence if it relates to the

same general wrong or conduct complained of in the original pleading. <u>Kamerman v. Pako Co., Inc.</u>, 75 F.R.D. 673, 675 (S.D.N.Y. 1977). A plaintiff need only show that the new defendant's liability arises out of the same conduct as originally alleged. <u>Brock v. Bua</u>, 83 A.D.2d 61, 68-69 (N.Y. App. Div. 2d Dep't 1981), <u>abrogated in part by</u> <u>Buran v. Coupal</u>, 661 N.E.2d 978, 981 (N.Y. 1995).

Cantor's claims against Globe arise out of the same conduct, transaction or occurrence as the claims alleged in Cantor's Original Complaint. All of Cantor's claims arise out of the crash of Flight 11 into One World Trade Center on September 11, 2001. Cantor's Original Complaint specifically alleged that American and MassPort were liable because they negligently failed to provide adequate security at Logan, where Flight 11 originated. Cantor's Proposed Amended Complaint relies on these same allegations as the basis for its new claims against Globe. Cantor's claims against Globe arise out of the same conduct and occurrence as alleged in Cantor's Original Complaint.

> **2. Globe Had Notice Of The Claims Against It And Was In Unity Of Interest With American**

The unity of interest element is satisfied where "the interests of the parties . . . is such that they stand or fall together and that judgment against one will similarly affect the other." <u>Beck v. Consolidated Rail Corp.</u>, 394 F.Supp.2d 632, 640 (S.D.N.Y. 2005) (citations omitted)). The purpose of the unity of interest requirement is to ensure that the new defendant can be charged with timely notice of the underlying dispute and have fair opportunity to investigate all defenses. <u>Buran</u>, 661 N.E.2d at 983. Thus, parties that share the same defenses are "united in interest." <u>Brock v. Bua</u>, 83 A.D.2d 61, 68 (N.Y. App. Div. 2d Dep't 1981) (if the original defendant had a fair opportunity to investigate all defenses available to both defendants, there is not prejudice to the new defendant), <u>abrogated in part by</u> <u>Buran v. Coupal</u>, 661 N.E.2d 978 (N.Y. 1995). As

such, interests are united "where one party is vicariously liable for the acts of the other." Beck, 394 F.Supp.2d at 640; Hemmings v. St. Marks Hous. Assoc., 169 Misc.2d 155, 160 (N.Y. Sup. Ct. 1996) (finding that property owner was vicariously liable for general contractor pursuant to a contractual indemnification agreement and local labor laws). Significantly, the New York unity of interest requirement is "arguably more lenient than the parallel federal provision." Sloane v. Town Greenburgh, No. 01-CV-11551, 2005 WL 1837441, at *3 (S.D.N.Y. July 27, 2005).

It cannot be disputed that Globe and American are united in interest – they are all contractually related **and** vicariously liable for each another's conduct. As alleged in Cantor's Original and Proposed Amended Complaints, prior to September 11, 2001, American and MassPort entered into contractual relationships with Globe, whereby Globe agreed to provide security services at Logan; including the operation of passenger screening checkpoints. That contractual relationship establishes the necessary unity of interest required under New York's relation back standard.

Further, Globe would not be prejudiced by Cantor's proposed amendment because it has defended against these claims since before Cantor filed its Original Complaint. Since at least as early as April 2002, when World Trade Farmers filed its complaint against Globe, Globe has actively defended against these claims on the merits. Indeed, when Cantor filed its Original Complaint, that Complaint was consolidated into the Property Plaintiffs' Fourth Amended Master Liability Complaint, which asserted negligence claims against Globe. By that time, Globe had filed several answers to those claims and even moved to dismiss the claims on the merits. As such, relation back is proper because Globe can be charged with notice of the original action and will not be prejudiced in maintaining a defense to Cantor's claims on the merits. Indeed, because the Master Complaint that was in effect when Cantor filed its Original

Complaint already contained negligence claims against Globe, Cantor's failure to name Globe was inconsequential regarding notice to Globe and Globe's ability to investigate all viable defenses.

### 3. Globe Knew About The Claims Against It Before Cantor Filed Its Original Complaint And Should Have Known That Cantor's Failure To Name Globe Was An Oversight

New York's "mistake" requirement will be satisfied if "the omission to name the new party in the original complaint was not an attempt to secure some tactical advantage in the litigation." Beck, 394 F.Supp.2d at 640. Whether the party seeking the amendment acted in bad faith is dispositive. Id.; see e.g., Brown v. Aurora Sys. Inc., 283 A.D.2d 956, 957 (N.Y. App. Div. 4th Dep't 2001) (finding that failure to name the successor entity as a defendant was a mistake due to the complicated relationship of the two entities, and not the result of a strategy to obtain a tactical advantage); Blakeslee v. Royal Ins. Co., No. 93-CV-1633, 1998 WL 209623 (S.D.N.Y. April 29, 1998) (allowing relation back where plaintiff failed to originally add defendant despite having some idea of defendant's involvement because plaintiff's failure was not intentional or rooted in bad faith).

Significantly, if the plaintiff satisfies these requirements, the plaintiff need not demonstrate that its failure to name the defendant was excusable. Buran v. Coupal, 661 N.E.2d 978, 981 (N.Y. 1995). For example, in Blakeslee v. Royal Ins. Co., No. 93-CV-1633, 1998 WL 209623 (S.D.N.Y. April 29, 1998), a defendant moved to amend to assert a claim against a signatory to a disputed promissory note who was not originally named in the case. Id. at *5. The signatory opposed the motion by arguing that the defendant had "no reasonable excuse for wasting [time] to implead" the signatory because her name appeared on the note. Id. Nevertheless, the court permitted the defendant to add the signatory because there was no indication that the defendant "acted intentionally or in bad faith in failing to file a claim against

[the signatory] sooner." Id. at *6; see also Beck v. CONRAIL, 394 F. Supp. 2d 632, 634 (S.D.N.Y. 2005). Thus, this element of the New York relation back doctrine "is more forgiving than the federal rule" and does not require a showing that the mistake was excusable. Mabry, 2008 WL 619003 at *6.

Cantor's failure to name Globe was not done in bad faith, intentionally, or to obtain a strategic advantage. Indeed, irrespective of the reason for Cantor's failure to sue Globe, it has gained no strategic advantage and Globe would suffer no prejudice by being added as a Defendant to Cantor's Complaint. To the contrary, Globe is actually gaining an unfair strategic advantage from Cantor's innocent error because Globe could escape certain liability based on an innocent oversight by Cantor.

Additionally, Globe knew or should have known that Cantor's failure to name Globe was an oversight. All Plaintiffs that were tenants in the World Trade Center sued Globe before Cantor filed its Original Complaint. The Property Plaintiffs' Third Amended Master Liability Complaint, which was in effect when Cantor filed its Original Complaint, included negligence claims against Globe. Because Globe was fully aware of the claims against it, and because there was no conceivable strategic advantage for Cantor to have purposefully omitted Globe from its Original Complaint, Globe should have known that Cantor's failure to name it was an oversight.

Under New York's relation back principles, Cantor should be permitted to amend its Original Complaint to add Globe. This amendment will not result in any prejudice to Globe.

## V. CONCLUSION

Cantor's motion to amend its Original Complaint to add Globe Aviation Services Corporation, Globe Airport Security Services, Inc., Burns International Security Services Corporation, Burns International Services Corp., Pinkerton's Inc., and Securitas A.B. as Defendants in this action should be granted. All of these Defendants were named in this

litigation before Cantor filed its Original Complaint. There is no prejudice to any party by permitting Cantor to correct its Original Complaint to asserts claims against these already-named Defendants. Additionally, Cantor should be granted leave to conform its pleading to this Court's Stipulated Order dismissing Riggs National Corporation, Riggs Bank, N.A., and Silverstein Properties, Inc. because Cantor's proposed amendments do not prejudice any party. Cantor's motion to amend should be granted in its entirety.

September 29, 2009

**SAUL EWING LLP**

/s Candice Toll Aaron
Candice Toll Aaron
John F. Stoviak (pro hac vice)
Shiloh D. Theberge (pro hac vice)
Saul Ewing LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102-2186
Phone: 215.972.7777
Fax: 215.972.7725
jstoviak@saul.com
stheberge@saul.com
caaron@saul.com