# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                                    :
IN RE SEPTEMBER 11 LITIGATION            :   21 MC 101 (AKH)
                                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                                    :
CANTOR FITZGERALD & CO., et al.,         :
                                                    :
                        Plaintiffs,                :   04-CV-7318 (AKH)
            v.                                     :
                                                    :
AMERICAN AIRLINES, INC., and AMR         :
CORP.,                                             :
                        Defendants.            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

WHEREAS, this Settlement Agreement and Release of Claims, dated as of December 12, 2013 (hereafter, "Settlement Agreement"), is entered into by and between (i) Cantor Fitzgerald & Co., Cantor Fitzgerald Associates, L.P., Cantor Fitzgerald Brokerage, L.P., Cantor Fitzgerald Europe, Cantor Fitzgerald International, Cantor Fitzgerald Partners, Cantor Fitzgerald Securities, Cantor Fitzgerald, L.P., Cantor Index Limited, CO2e.com, LLC, eSpeed Government Securities, Inc., eSpeed, Inc., eSpeed Securities, Inc., and TradeSpark, L.P. (hereafter, collectively "Cantor") and (ii) American Airlines, Inc. and AMR Corporation (hereafter, collectively, "American") with the parties referred to in (i) and (ii) hereafter collectively referred to as the "Settling Parties";

WHEREAS, Cantor brought a lawsuit, *Cantor Fitzgerald & Co., et al. v. American Airlines, Inc., et al.*, 04 CV 07318 (AKH) (S.D.N.Y.) (hereafter, the "Cantor Lawsuit"), pursuant to the Air Transportation Safety and System Stabilization Act, 49 U.S.C. § 40101 *et seq.* (hereafter, "ATSSSA"), against American alleging property damage and business interruption losses arising from the hijacking and subsequent crash on September 11, 2001 of American Airlines Flight 11;

WHEREAS, the Cantor Lawsuit was consolidated within the *In re September 11 Litigation*, Master Docket No. 21 MC 101, before Judge Alvin K. Hellerstein of the United States District Court for the Southern District of New York;

WHEREAS, the Cantor Lawsuit is the last pending lawsuit (except for cases on appeal) against American or any Aviation Defendant in the Master Docket arising out of the Events of September 11, 2001;

WHEREAS, on November 29, 2011, American commenced with the U.S. Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") a voluntary case under chapter 11 of title 11 of the United States Code;

WHEREAS, on January 27, 2012, the Bankruptcy Court issued an order lifting the automatic stay (the "Lift Stay Order") permitting the Cantor Lawsuit to proceed and permitting Cantor to recover damages only to the extent of American's available and collectible insurance, and bankruptcy counsel for American has advised Cantor that no additional approvals from the Bankruptcy Court are required for this Settlement Agreement;

WHEREAS, a copy of the Lift Stay Order is annexed hereto as Exhibit A and incorporated by reference;

WHEREAS, paragraph 58 of the Bankruptcy Court's order confirming American's chapter 11 plan (the "Confirmation Order") provides that notwithstanding the chapter 11 plan or the Confirmation Order, the Lift Stay Order remains in full effect, and, therefore, no additional approvals from the Bankruptcy Court are required for this Settlement Agreement;

WHEREAS, under Section 408(a) of the ATSSSA, American's liability, or the liability of any other Aviation Defendant in the Master Docket, for all claims arising from the Events of September 11, 2001 "shall not be in an amount greater than the limits of liability insurance coverage maintained";

WHEREAS, Cantor has received representations that each of the Contributing Insurers (defined herein) are in a position to pay their allocable share of the Settlement Amount (defined herein) consistent with Section 3;

WHEREAS, the Settling Parties desire to resolve all disputes between them arising out of the Events of September 11, 2001, as defined herein, and to settle and dismiss the Cantor Lawsuit on the terms set forth herein, without any Settling Party hereto admitting or conceding in any way that any of the claims, defenses or assertions of any other Settling Party are valid;

NOW, THEREFORE, in consideration of the mutual promises contained in this Settlement Agreement and upon satisfaction of all conditions described herein, the Settling Parties agree to the following in complete settlement of the Cantor Lawsuit:

1.  <u>Definitions</u>.  The following definitions apply to the terms used in this Settlement Agreement.

    a.  "Agreement Dispute" means any dispute arising out of or related to this Settlement Agreement, involving any combination of the Settling Parties, the Contributing Insurers, including any Defaulting Contributing Insurers, and the Aviation Defendants in the Master Docket.

    b.  "Allocation Agreement" means the agreement among the Contributing Insurers that is annexed hereto as Exhibit B, which was previously approved by both the District Court and the Court of Appeals for the

Second Circuit, see *In re September 11 Litig.*, 723 F. Supp. 2d 534 (S.D.N.Y. 2010), *aff'd*, 650 F.3d 145 (2d Cir. 2011).

c.      "Aviation Defendants in the Master Docket" means American Airlines, Inc.; AMR Corporation; United Airlines, Inc.; United Continental Holdings (formerly known as UAL Corporation); Continental Airlines, Inc.; US Airways, Inc.; US Airways Group, Inc.; Colgan Air, Inc.; Globe Aviation Services Corporation; Globe Airport Security Services, Inc.; Huntleigh USA Corporation; The Boeing Company; Massachusetts Port Authority; Burns International Services Company, LLC (formerly known as Burns International Services Corporation); Burns International Security Services Company, LLC (formerly known as Burns International Security Services Corporation); Pinkerton's, LLC (formerly known as Pinkerton's, Inc.); and Securitas AB, and each of their successors and assigns.  Cantor only has claims pending against American Airlines, Inc. and AMR Corporation.

d.      "Cantor Lawsuit" means the lawsuit captioned *Cantor Fitzgerald & Co., et al. v. American Airlines, Inc., et al.*, 04 CV 07318 (AKH).

e.      "Conditions To Payment" means the execution of this Settlement Agreement by the Settling Parties and the Contributing Insurers, the execution and delivery of the Release described in Section 8 of this Settlement Agreement, and the Court Order described in Section 7 having become a Final Order.

f.      "Contributing Insurer(s)" means an insurer or the insurers of American, United Airlines, Inc. ("United") and Globe Aviation Services Corporation ("Globe") that entered into the Allocation Agreement and that are contributing payments to the Settlement Amount.  The term "Contributing Insurers" shall not include the insolvent insurers whose 1.86% share of the Settlement Amount constitutes the Known Shortfall.

g.      "Defaulting Contributing Insurer(s)" means any Contributing Insurer(s) that has failed to pay its share of the Settlement Amount into escrow on or before January 10, 2014.

h.      "Discovery Materials" means all documents, information and other materials produced to Cantor by American (or any governmental agency), or by Cantor to American, in response to formal or informal discovery requests in the Cantor Lawsuit.  These Discovery Materials include, but are not limited to, copies, electronic or otherwise, and reproductions of certain documents, including damages expert reports, and all transcripts, exhibits, videotapes, and audio recordings of all depositions conducted of current and former employees of the Aviation Defendants in the Master Docket in In re September 11 Litigation, 21 MC 101 (AKH).

3

i.     "District Court" means the United States District Court for the Southern District of New York.

j.     "Effective Date" means the later of:  (1) thirty-five (35) days after the execution of this Settlement Agreement by all Settling Parties; or (2) two (2) business days after the issuance of a Final Order as referenced in Section 7 herein.

k.     "Known Shortfall" means the 1.86% of the Settlement Amount attributable to American's and United's insurers, Centennial Insurance Company and Lumbermens Mutual Casualty Company, that are currently insolvent.

l.     "Final Order" means a final, appealable order issued by the District Court, as to which the time for appeal has expired with no appeal being taken or, if an appeal has been taken, the appeal has been resolved with no reversal or material variation of the order to which the Settling Parties and the Contributing Insurers do not consent.

m.     "Events of September 11, 2001" means the hijackings and subsequent crashes of American Airlines Flight 11, American Airlines Flight 77, United Airlines Flight 175 and United Airlines Flight 93 on September 11, 2001.

2.     Settlement Amount.  The Settlement Amount shall consist of ONE HUNDRED AND THIRTY-FIVE MILLION UNITED STATES DOLLARS ($135,000,000.00) less the Known Shortfall.

3.     Payment of Settlement Amount.

a.     The Contributing Insurers shall pay the Settlement Amount on or before January 10, 2014 into a separate escrow account (the "Escrow Account") to be established by Saul Ewing LLP for the sole and specific purpose of holding the settlement funds.  The Escrow Account and the funds therein shall be kept separate from all other escrow accounts or operating accounts of Saul Ewing LLP and shall not be comingled with Saul Ewing LLP's general funds.  If the Settlement Amount is not released from the Escrow Account by February 17, 2014, the Settling Parties will negotiate a separate Escrow Agreement to govern the handling and investment of the funds held in the Escrow Account.

b.     The parties acknowledge that the funds being held in the Escrow Account are the property of the Contributing Insurers, and not the property of Cantor or Saul Ewing LLP, until the Conditions To Payment are met. Saul Ewing LLP may not release funds from the Escrow Account to or for the benefit of Cantor except upon (1) express written direction from the Aviation Defendants' Liaison Counsel or his designated successor as representative of American and the Contributing Insurers or (2) an order

from the Court that all conditions to release of the funds from escrow have been satisfied.  Saul Ewing LLP shall be entitled to rely on any instrument or signature believed by it to be genuine and may assume that any person purporting to give any writing, notice or instruction in connection with the Escrow Account is duly authorized to do so by the party on whose behalf such writing, notice or instruction is given.  Saul Ewing LLP may resign from its duties hereunder with regard to the Escrow Account for any reason whatsoever by giving prior written notice of such resignation to Cantor and American effective on the earlier of the effectiveness of the appointment of a replacement or thirty (30) days after such notice was given.  Upon receiving the foregoing notice, Cantor and American shall designate within thirty (30) days a new escrow agent mutually acceptable to them.  If Cantor and American cannot agree on a new escrow agent within such thirty (30) day period, the new escrow agent shall be a person chosen by the Court.

c.       If all the Conditions To Payment are met, on or before the Effective Date, American and the Contributing Insurers shall, within two (2) business days, authorize release from the Escrow Account of, the Settlement Amount (which for the avoidance of doubt, shall not include the Known Shortfall) to Cantor, less the fees and expenses of escrow.

d.       In the event of a Defaulting Contributing Insurer, Saul Ewing LLP shall not release any funds from the Escrow Account to or for the benefit of Cantor until Cantor's waivable right of termination under Section 4.a has expired or been waived in writing.

e.       The undersigned agree that Saul Ewing LLP may represent Cantor in any matter, including legal action directly or indirectly adverse to American, that may arise in connection with the Escrow Account.  In the event Saul Ewing LLP is retained to represent Cantor in any such legal action, Saul Ewing LLP shall promptly thereafter resign as escrow agent hereunder. Should Saul Ewing LLP be retained, its status as dispute counsel does not expand or limit the right of the Settling Parties to obtain discovery from Saul Ewing LLP as to non-privileged matters.

f.       The Settling Parties acknowledge and agree that the Settlement Amount is being paid by the Contributing Insurers pursuant to the Allocation Agreement and that payments made on behalf of their insured are to be credited against their insured's limits of liability under Section 408(a)(1) of the ATSSSA.

g.       The Settling Parties further acknowledge and agree that by entering into this Settlement Agreement, American in no way intends to or in fact waives any of the protections afforded by the United States Bankruptcy Code or by the Lift Stay Order.

4.     <u>Right of Termination</u>.

    a.     In the event of a Defaulting Contributing Insurer, Cantor shall have, at its election, a waivable right to terminate this Settlement Agreement at any time up to and including five (5) business days after the Effective Date by providing written notice of termination to American's Counsel.  If Cantor exercises its right of termination, termination shall take effect on the fifth (5th) business day after the Effective Date and all settlement funds in escrow shall be returned to the Contributing Insurers by Saul Ewing LLP.  If Cantor has failed to provide notice of termination by the fifth (5th) business day after the Effective Date, it shall be deemed to have waived the right to terminate on this basis even without a written waiver, notwithstanding Section 15 below.

    b.     If Cantor does not elect to exercise or waives its right to terminate, Cantor shall retain any and all portions of and rights to the Settlement Amount paid or to be paid into the escrow account by Contributing Insurers, and Cantor shall be entitled to pursue claims against only the Defaulting Contributing Insurers for their pro rata share of the full Settlement Amount.  Cantor shall also be entitled to assert any and all rights and priorities available to American, United and Globe (as policyholders), as well as any contractual rights it may have arising from this Agreement, in enforcing the payment obligation of such Defaulting Contributing Insurer.

5.     <u>Insolvency of a Contributing Insurer</u>.   In the event of any insolvency, reorganization, rehabilitation or similar action or proceeding involving any Contributing Insurer, if a claim seeking the return of such Contributing Insurer's share of the Settlement Amount is brought or asserted in connection with such proceeding after the Effective Date, then notwithstanding any other provision of this Settlement Agreement:  (a) the validity and enforceability of the District Court order approving this settlement, this Settlement Agreement, and the releases granted to American and the other Aviation Defendants in the Master Docket shall not be affected by any such claim; and (b) in addition to their own rights under this Settlement Agreement, Cantor shall also be entitled to assert, in such insolvency, reorganization, rehabilitation or similar action or proceeding, any and all rights and priorities available to American, United and Globe (as policyholders) in enforcing the payment obligation of such Contributing Insurer. Nothing in this Section shall be interpreted to create or enhance any rights possessed by any Contributing Insurer in connection with any such proceeding.

6.     <u>Effect of Known Shortfall</u>.  The Settling Parties agree that there is a Known Shortfall of 1.86% at this time.  Cantor shall not be entitled to terminate this Settlement Agreement due to the occurrence of the Known Shortfall and Section 4 shall not apply to any Known Shortfall. American and the Contributing Insurers represent and warrant to Cantor that they are not aware of any Contributing Insurer insolvencies at this time other than the Known Shortfall.  Any right to

pursue any claim for the Known Shortfall that currently rests with American or United is hereby assigned to Cantor.

7.  <u>Court Order Required Before Payment</u>.  The Settling Parties shall submit a joint motion for approval of the settlement on or after January 3, 2014 and shall request that the District Court hold a hearing to approve the settlement as soon as convenient for the Court and counsel.  The Contributing Insurers and American shall not authorize release from the escrow account of the Settlement Amount to Cantor unless and until the District Court issues a Final Order:  (i) approving this Settlement Agreement and the Settlement Amount as consistent with ATSSSA as to American, the other Aviation Defendants in the Master Docket, and Cantor; (ii) holding that all amounts paid pursuant to this Settlement Agreement, and in accordance with the Allocation Agreement, are to be credited against the corresponding limits of liability for American, United and Globe established by Section 408(a)(1) of ATSSSA; and (iii) dismissing with prejudice the Cantor Lawsuit.

8.  <u>Release</u>.  On or before the Effective Date, Cantor shall execute and deliver to American's counsel a Release in the form annexed hereto as Exhibit C waiving, discharging and releasing American, the other Aviation Defendants in the Master Docket, and the Contributing Insurers, together with their present and former employees, agents, attorneys, insurers, predecessors, successors, parents, subsidiaries, affiliates, members, subcontractors, suppliers, heirs, executors, administrators and assigns, from the claims specified therein, which include any and all claims, actions, causes of action, suits, damages, fees (including attorneys' fees) and demands that have been, are now, or could have been asserted in the Cantor Lawsuit, or that in any way involve, relate to, or arise out of, in whole or in part, the Events of September 11, 2001, including the claims of Cantor's insurers or reinsurers (in their capacity as such) for all or any portion of the damages allegedly suffered by Cantor or any other person claiming by, through or on behalf of Cantor for such damages.  Execution and delivery of the Release as set forth in this Section shall be a condition precedent to the payment of the Settlement Amount (less the Known Shortfall) to Cantor.  The Release shall not become effective until the Settlement Amount (less the Known Shortfall) has been paid to Cantor by the Contributing Insurers consistent with Sections 2 and 3 and until the Right of Termination of Section 4 has expired without exercise or been waived in writing.  Nothing in this Settlement Agreement or in any Release shall be deemed to waive, release or discharge any rights that Cantor has pursuant to or arising from this Settlement Agreement or any document executed or delivered in connection with this Settlement Agreement.

9.  <u>Return or Destruction of Discovery Materials</u>.  With respect to Discovery Materials, the Settling Parties shall comply with the terms and conditions of the Confidentiality Protective Order (the "Protective Order") signed by the Honorable Alvin K. Hellerstein on March 30, 2004, as modified from time to time.  Cantor and American agree that in light of this Settlement Agreement and in accordance with Section 8 of the Protective Order, Cantor and American will, at their option,

either destroy, to the extent reasonably technically-practicable, or return to the producing party all Discovery Materials within six (6) years of the Effective Date or prior thereto pursuant to Court Order. If Cantor or American elects to destroy rather than return Discovery Materials, Cantor or American's counsel shall attest to the destruction of such Discovery Materials by transmitting a certificate in the form annexed as Exhibit D to the opposing Settling Parties' counsel.

10.  <u>Confidentiality of Settlement Agreement</u>.  Subject to direction from the District Court, this Settlement Agreement, its terms, and the mediation between the Settling Parties shall be kept confidential to the maximum extent possible.  The Parties may disclose the terms of this Settlement Agreement to the partners of Cantor Fitzgerald, L.P., auditors, insureds, co-insurers, reinsurers and other similar entities on condition that they in turn comply with the confidentiality provisions of this Section, as well as to the revenue, taxing or regulatory authorities in any relevant jurisdiction, and as required to satisfy any disclosure obligation imposed by law or court order.

11.  <u>No Admissions</u>.  Cantor and American acknowledge and agree that neither party nor any other Aviation Defendant in the Master Docket, by this Settlement Agreement or otherwise, makes any admissions or concessions with respect to liability for the Events of September 11, 2001 or the damages suffered therefrom.

12.  <u>No Expansion of Insurance Policies</u>.  Nothing in this Settlement Agreement shall be interpreted to expand the limits of coverage contained in any applicable insurance policy between a Contributing Insurer and its insured Aviation Defendant.

13.  <u>Cooperation</u>.  The Settling Parties shall cooperate and use all reasonable efforts to bring about the satisfaction of all terms and conditions of this Settlement Agreement, including the securing of the order described in Section 7.  As soon as practicable following the execution of this Settlement Agreement, Cantor and American will jointly move the District Court to seek the order described in Section 7.

14.  <u>Rights and Effect of Termination</u>.

a.  Either Cantor or American may elect to terminate the Settlement Agreement in any of the following circumstances:  (i) a material breach of the Agreement's terms by opposing Settling Parties; or (ii) the failure of the District Court to enter the order contemplated by Section 7 within sixty (60) days of the filing of a joint unopposed motion for an order approving the Settlement Agreement, which shall not be filed before January 3, 2014, or the reversal or material variation by an appellate court of competent jurisdiction of the District Court's entry of the order contemplated by Section 7.

    b.    Cantor's separate right to terminate the Settlement Agreement as provided in Section 4.a is only in accordance with that provision's terms.

    c.    Should this Settlement Agreement be terminated, then: (1) all amounts held in the Escrow Account shall be promptly returned to the Contributing Insurers; (2) this Settlement Agreement, and the Release contemplated herein, shall be null, void and of no force and effect; (3) neither Cantor, American nor the Contributing Insurers shall have any further obligations hereunder; and (4) the Settling Parties shall be placed in the same position they were in immediately prior to execution of this Settlement Agreement, including that Cantor shall have the right to reinstate all of its claims asserted in the Cantor Lawsuit and to request a prompt trial thereof.

    d.    Any election to terminate shall be effective only if made in writing by the terminating Settling Parties' counsel to the opposing Settling Parties' counsel within ten (10) days of the event giving rise to the right to terminate under Section 14.a.

15.    <u>Waiver</u>.

    a.    Cantor can waive any term of this Settlement Agreement for Cantor's benefit, including the failure of any condition for Cantor's benefit or a material breach by American and/or the Contributing Insurers. American can waive any term of this Settlement Agreement for its benefit, including the failure of any condition for American's, the Aviation Defendants in the Master Docket's and the Contributing Insurers' benefit or a material breach by Cantor. To be effective, a waiver must be contained in a writing making specific reference to this Section, and issued by the waiving Settling Parties' counsel to the opposing Settling Parties' counsel except as provided in Section 4.

    b.    If any term or provision of this Settlement Agreement is deemed by any court to be invalid, illegal or unenforceable, all other terms and provisions of this Settlement Agreement shall nevertheless remain in full force and effect so long as: (a) the invalid, illegal or unenforceable provision is waived by the Settling Party or Settling Parties for whose benefit the provision inures; or (b) the Settling Parties otherwise agree to modify this Settlement Agreement.

16.    <u>Choice of Law</u>.  This Settlement Agreement shall be governed by and construed in accordance with the substantive laws of the State of New York, exclusive of laws relating to conflicts of laws, except that wherever ATSSSA applies, ATSSSA shall control.

17.    <u>Dispute Resolution</u>.  Any Agreement Dispute shall be decided by the Honorable Alvin K. Hellerstein or his designated successor.  Judge Hellerstein (or his designated successor) shall be requested to retain jurisdiction over the Cantor

Lawsuit for the purpose of enforcement of this Settlement Agreement and the resolution of any Agreement Dispute. Cantor and American hereby agree to submit to the jurisdiction of the District Court for the resolution of any Agreement Dispute, and expressly waive any right to challenge venue, subject matter jurisdiction or personal jurisdiction in that court. In the event Judge Hellerstein (or his designated successor or an appellate court) determines that Federal subject matter jurisdiction is lacking over any Agreement Dispute, the Supreme Court of the State of New York, County of New York shall be the exclusive forum for resolution of such Agreement Dispute, and the Settling Parties expressly waive any right to challenge venue, subject matter jurisdiction or personal jurisdiction in that court. The Settling Parties agree to accept service of process with respect to any Agreement Dispute in accordance with the notice provisions of this Settlement Agreement. For the avoidance of doubt, no Settling Party is submitting to jurisdiction or waiving any rights or defenses (including jurisdictional defenses) as to any disputes other than Agreement Disputes.

18. <u>Entire Agreement</u>. This Settlement Agreement and the Exhibits hereto constitute the entire agreement among and between the Settling Parties hereto. There are no promises, representations, undertakings or agreements other than as specifically set forth herein and in the Exhibits hereto. The Settling Parties agree that no Settling Party shall be considered the drafter of this Settlement Agreement for purposes of the doctrine of *contra proferentem*. This Settlement Agreement may be amended only by a writing, signed by all Settling Parties hereto, and may not be amended orally.

19. <u>Binding Effect</u>. This Settlement Agreement shall not be binding unless and until it is signed by the Settling Parties and the Contributing Insurers and delivered by each Settling Party to the opposing Settling Party no later than December 19, 2013. This Settlement Agreement shall bind and inure to the benefit of the Settling Parties hereto, along with each of their present and former officers, directors, employees, insurers, attorneys, predecessors, shareholders, successors, parents, affiliates, members, subsidiaries, heirs, executors, administrators, and assigns.

20. <u>Authorization to Enter into Agreement</u>.

a. Each Settling Party represents and warrants that it is fully authorized to enter into, execute and perform its obligations under this Settlement Agreement and that it has not transferred or assigned to any person any claim or any interest in any claim that it has asserted in the Cantor Lawsuit.

b. All signatories represent and warrant that they are authorized to sign on behalf of the Settling Party or Settling Parties or Contributing Insurers or any other signatories on whose behalf they are signing this Settlement Agreement and have full authority to enter into this Settlement Agreement on their behalf.

       c.     The Contributing Insurers have authorized American to enter into this Settlement Agreement.

21.    <u>Voluntariness</u>.  This Settlement Agreement is entered into voluntarily, after each Settling Party has fully discussed it with its counsel.  No Settling Party is entering this Settlement Agreement under duress or other compulsion.  By signing this Settlement Agreement, each Settling Party acknowledges that it has read this Settlement Agreement and understands its terms, and each Settling Party understands that it cannot claim in the future that it did not read or understand this Settlement Agreement.

22.    <u>Counterparts</u>.  This Settlement Agreement may be signed in multiple counterparts that, taken together, shall be deemed to constitute one Settlement Agreement. Copies of executed signature pages may be sent by telecopier or electronic mail, and such signatures shall be effective as original signatures.

23.    <u>Notices</u>.  All notices required to be sent to any Settling Party pursuant to this Settlement Agreement shall be sent by electronic mail, and by United States Postal Service, to the Settling Party in accordance with the contact information set forth below:

| | |
|---|---|
| Cantor Fitzgerald & Co., Cantor Fitzgerald Associates, L.P., Cantor Fitzgerald Brokerage, L.P., Cantor Fitzgerald Europe, Cantor Fitzgerald International, Cantor Fitzgerald Partners, Cantor Fitzgerald Securities, Cantor Fitzgerald, L.P., Cantor Index Limited, CO2e.com, LLC, eSpeed Government Securities, Inc., eSpeed, Inc., eSpeed Securities, Inc., and TradeSpark, L.P. | John F. Stoviak, Esq. SAUL EWING LLP Centre Square West 1500 Market Street, 38th Floor Philadelphia, PA 19102 (jstoviak@saul.com) |

| | |
|---|---|
| American Airlines, Inc., and AMR Corporation | Desmond T. Barry, Jr. Esq. CONDON & FORSYTH LLP 7 Times Square New York, NY 10036 (dbarry@condonlaw.com)  -and-  Maura K. Monaghan, Esq. DEBEVOISE & PLIMPTON LLP 919 Third Avenue New York, NY 10022 (mkmonaghan@debevoise.com) |

ACCEPTED AND AGREED:

Dated:   December __, 2013

American Airlines, Inc., and AMR Corporation

By: _____

Name: _____

Title: _____

Dated:   December 17, 2013

Cantor Fitzgerald & Co., Cantor Fitzgerald Associates, L.P., Cantor Fitzgerald Brokerage, L.P., Cantor Fitzgerald Europe, Cantor Fitzgerald International, Cantor Fitzgerald Partners, Cantor Fitzgerald Securities, Cantor Fitzgerald, L.P., Cantor Index Limited, CO2e.com, LLC, eSpeed Government Securities, Inc., eSpeed, Inc., eSpeed Securities, Inc., and TradeSpark, L.P.

By: _____

Name: Stephen Merkel

Title: behalf Counsel, EMD, Secretary Director, EVP

REVIEWED AND APPROVED:

Dated:   December __, 2013

Contributing Insurers

By: _____

Name:  Desmond T. Barry, Jr.

Title: Attorney-In-Fact

ACCEPTED AND AGREED:

Dated:   December *17*, 2013

American Airlines, Inc., and AMR Corporation

By: _____

Name: *DESMOND T. BARRY, JR.*

Title: *ATTORNEY·IN·FACT*

Dated:   December __, 2013

Cantor Fitzgerald & Co., Cantor Fitzgerald Associates, L.P., Cantor Fitzgerald Brokerage, L.P., Cantor Fitzgerald Europe, Cantor Fitzgerald International, Cantor Fitzgerald Partners, Cantor Fitzgerald Securities, Cantor Fitzgerald, L.P., Cantor Index Limited, CO2e.com, LLC, eSpeed Government Securities, Inc., eSpeed, Inc., eSpeed Securities, Inc., and TradeSpark, L.P.

By: _____

Name: _____

Title: _____

REVIEWED AND APPROVED:

Dated:   December *17*, 2013

Contributing Insurers

By: _____

Name:  Desmond T. Barry, Jr.

Title: Attorney-In-Fact

12

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                        :

**In re**                      :        **Chapter 11 Case No.**

                       :

**AMR CORPORATION, *et al.*,**    :        **11-15463 (SHL)**

                       :

           **Debtors.**     :        **(Jointly Administered)**

                       :

------------------------------------------------------------x

## ORDER PURSUANT TO 11 U.S.C. § 362(d)(1)
## MODIFYING THE AUTOMATIC STAY AS TO CERTAIN CLAIMS
## FOR A LIMITED PURPOSE AND SUBJECT TO CERTAIN CONDITIONS

Upon the Motion, dated January 13, 2012 (the "**Motion**"),[1] of AMR Corporation,

American Airlines, Inc., AMR Eagle Holding Corporation, and certain of their subsidiaries, as

debtors and debtors in possession (collectively, the "**Debtors**"), pursuant to section 362(d)(1) of

title 11, United States Code (the "**Bankruptcy Code**"), for entry of an order pursuant to 11

U.S.C. § 362(d)(1) modifying the automatic stay as to certain claims for a limited purpose and

subject to certain conditions, all as more fully described in the Motion; and the Court having

jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C.

§§ 157 and 1334 and Standing Order M-61 Referring to Bankruptcy Judges for the Southern

District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward,

Acting C.J.); and consideration of the Motion and the relief requested therein being a core

proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to

28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided, and

it appearing that no other or further notice need be provided; and a hearing having been held to

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in
the Motion.

consider the relief requested in the Motion (the "**Hearing**"); and upon the record of the Hearing

and all of the proceedings had before the Court; and the Court having found and determined that

the relief sought in the Motion is in the best interests of the Debtors, their estates, creditors, and

all parties in interest, and that the legal and factual bases set forth in the Motion establish just

cause for the relief granted herein; and after due deliberation and sufficient cause appearing

therefor, it is

ORDERED that the Motion is granted as provided herein; and it is further

ORDERED that the Debtors are authorized, but not directed, to enter into

Agreements with Claimants, substantially in the form annexed hereto as **Exhibit "A"**, modifying

the automatic stay to the limited extent necessary to enable Claimants to prosecute their Injury &

Damage Claims to final judgment or settlement (including commencing litigation with respect to

Claims), or seek payment of their Indemnification Claims, as applicable, subject to the Terms

and Conditions set forth below; and it is further

ORDERED that the following Terms and Conditions shall apply to modification

of the automatic stay with respect to the Claims:

(a)     All Claimants must seek consent of the Debtors to obtain
modification of the automatic stay under this Motion, and such
consent must be memorialized by an Agreement substantially in
the form annexed hereto as **Exhibit "A"**;[2]

(b)     Any Claimant who seeks to modify the automatic stay to proceed
against Available and Collectible Coverage may, but shall not be
required to, send a request to the Debtors' counsel, Weil, Gotshal
& Manges LLP, 767 Fifth Avenue, New York, New York 10153
(Attn: Kyle J. Ortiz, Esq. (email: kyle.ortiz@weil.com));

---

[2] If a Claimant and the Debtor cannot agree on an Agreement, nothing herein shall preclude the Claimant
from seeking relief from the Court or the Debtors opposing such relief.

(c)     As a condition precedent to executing an Agreement with the Debtors, a Claimant must agree to the following terms:

(i)     Claimants may only seek to recover any liquidated final judgment or settlement or be paid, as applicable, with respect to the Claims solely from the insurance coverage, if any, available and collectible under one or more of the Insurance Policies that cover the Claims (the "**Available and Collectible Coverage**");

(ii)    The automatic stay shall not be modified to permit a Claimant to attempt to recover from any party for intentional conduct or punitive damages;

(iii)   Any final judgment or settlement obtained by a Claimant shall be reduced by (I) the amount of any applicable deductible or self-insured retention under the applicable Insurance Policy, and (II) any share of liability under the applicable Insurance Policy of any insolvent insurer or co-insurer; *provided, however*, that no reduction in a final judgment or settlement obtained by the Claimant on account of an insurer's or co-insurer's insolvency pursuant to this Paragraph (c)(iii)(II) shall in any way reduce or increase or otherwise affect the liability under the applicable Insurance Policy of any other insurer or co-insurer; and *provided further*, that the Claimant shall reserve all rights to pursue any such insolvent insurer or co-insurer, whether in such insurer's or co-insurer's insolvency proceeding, from any applicable guaranty fund, or otherwise;

(iv)    A Claimant whose Claim is covered under one or more of the Insurance Policies providing, in the aggregate, 100% of any liquidated final judgment or settlement, or indemnification payment, as applicable, shall waive, release, and discharge the Debtors, their estates, and their respective successors, predecessors, assigns, affiliates, officers, directors, shareholders, employees, attorneys, and agents from all claims, causes of action, suits, debts, obligations, liabilities, accounts, damages, defenses, or demands whatsoever, known or unknown, that arise from the Claim, except to the extent of the Available and Collectible Coverage;

(v)    A Claimant whose Claim is covered under one of the Insurance Policies requiring the Debtors to pay a self-insured retention or deductible, shall proceed solely against the Available and Collectible Coverage and the automatic stay shall *not* be modified with respect to any deductible or self-insured retention and the Claimant, or the Insurance Carrier, as applicable, shall comply with all deadlines for asserting a general unsecured claim;

(d)    Nothing in this Order shall be construed as an agreement by the Debtors to provide assistance to or to cooperate with the Claimants in any way in the Claimants' efforts to prosecute or seek payment of their Claims or to recover from the Available and Collectible Coverage;

(e)    Agreements must be filed with the Court and shall not become effective until so filed;

(f)    Upon the filing of an Agreement by the Debtors with the Court, no further action by the Court shall be required for the modification of the automatic stay, subject to the Terms and Conditions, to become effective.

and it is further

ORDERED that nothing in the Motion or this Order authorizes the Debtors to modify the automatic stay with respect to any Claim covered by any Insurance Policy issued by ACE American Insurance Company or any of its affiliates without a further order of the Court; *provided*, *however*, that the Debtors are authorized, but not directed, to modify the automatic stay pursuant to the terms of this Order with respect to any Claim covered by any guaranteed cost Insurance Policy issued by ACE American Insurance Company or any of its affiliates; and it is further

ORDERED that the automatic stay is hereby modified to the limited extent necessary to allow Defense Counsel, including, without limitation, those professionals listed on

the annexed **Exhibit "B"**, to pursue payment of their Defense Costs solely from Available and Collectible Coverage; and it is further

ORDERED that the automatic stay shall *not* be modified to allow Defense Counsel to seek payment for any portion of such prepetiton fees and expenses that under one or more of the Insurance Policies are subject to a self-insured retention or deductible, and Defense Counsel or the Insurance Carrier, as applicable, shall comply with all deadlines for asserting a general unsecured claim; and it is further

ORDERED that Defense Counsel will not be required to comply with the payment procedures under the Court's Order Pursuant to 11 U.S.C. §§ 105(a), 327, 328, and 330 Authorizing Debtors to Employ Professionals Used in the Ordinary Course of Business *Nunc Pro Tunc* to the Commencement Date, entered January 17, 2012 (ECF No. 643) (the "OCP Order") to seek payment for any Defense Cost sought by Defense Counsel solely from Available and Collectible Coverage; and it is further

ORDERED that any Defense Cost sought by Defense Counsel solely from Available and Collectible Coverage will not count toward any payments caps under the OCP Order; and it is further

ORDERED that the Debtors are not required to track amounts paid to Defense Counsel from Available and Collectible Coverage, and, solely with respect to such amounts, the Debtors are not required to comply with the reporting requirements in the OCP Order or include such amounts in their monthly operating reports; and it is further

ORDERED that nothing in the Motion or this Order shall be deemed an admission of liability or otherwise on the part of the Debtors or the Insurance Carriers for the Claims asserted by the Claimants; and it is further

ORDERED that nothing in the Motion or this Order shall be deemed or construed to impact, impair, affect, determine, release, waive, modify, limit or expand: (i) the terms and conditions of any Insurance Policy; or (ii) any of the rights, remedies, defenses to coverage, and other defenses of any insurer under or for any Insurance Policy (including the right of any insurer to disclaim coverage); and it is further

ORDERED that nothing in the Motion or this Order shall: (i) affect the existing obligations of any Insurance Carrier to pay defense fees and/or expenses;(ii) affect the existing arrangements for the payment thereof; or (ii) otherwise alter any Insurance Carrier's existing indemnity payment obligations; and it is further

ORDERED that neither this Order, the Motion, nor any terms contained within either, shall be offered or received in evidence nor in any way referred to in any legal action or administrative proceeding among the Debtors and any Claimant, other than as may be necessary: (i) to obtain approval of and to enforce this Order; (ii) to seek damages or injunctive relief in connection therewith; or (iii) to prove that the automatic stay has been modified to allow commencement and prosecution of a Claim in accordance with the terms herein; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

Dated: New York, New York
      **January 27, 2012**

                             /s/ Sean H. Lane
                             United States Bankruptcy Judge

**<u>EXHIBIT "A"</u>**

**<u>Form Agreement</u>**

US_ACTIVE:\43909632\01\14013.0139

Harvey R. Miller
Stephen Karotkin
Alfredo R. Pérez
Stephen A. Youngman
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
                                        :

**In re**                                :        **Chapter 11 Case No.**
                                          :

**AMR CORPORATION,** *et al.,*      :        **11-15463 (SHL)**
                                          :

                         **Debtors.**       :        **(Jointly Administered)**
                                          :
------------------------------------------------------------x

**AGREEMENT BETWEEN THE DEBTORS AND**
**[CLAIMANT] TO MODIFY THE AUTOMATIC STAY FOR A LIMITED PURPOSE**

        This agreement (the "**Agreement**") is entered into between AMR Corporation and

certain of its subsidiaries, as debtors and debtors in possession in the above-captioned chapter 11

cases (collectively, the "**Debtors**") and [Claimant] (the "**Claimant**," and together with the

Debtors, the "**Parties**").

**RECITALS:**

        1.        On November 29, 2011 (the "**Commencement Date**"), the Debtors each

commenced with this Court a voluntary case under chapter 11 of title 11, United States Code (the

"**Bankruptcy Code**").  The Debtors are authorized to continue to operate their business and

manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

3.      [The Claimant is a party to the following litigation against the Debtors: ____ (the "**Proceeding**").] / [The Claimant is a lessor / counterparty under the ____ (the "**Lease / Contract**").  The Lease / Contract provides that the Debtors shall indemnify the Claimant for certain claims (the "**Indemnification Obligations**").]

4.      The [Injury & Damage Claims] / [Indemnification Claims][1] that are the subject of the [Proceeding] / [Indemnification Obligation] are covered in full or in part by available and collectible insurance coverage.  The Claimant has requested that the Debtors agree to modify the automatic stay pursuant to section 362(d)(1) of the Bankruptcy Code to allow the Claimant to [prosecute his or her Injury & Damage Claims] / [seek payment of his or her Indemnification Claims] solely to the extent of Available and Collectible Coverage.

5.      The Debtors have agreed to modify the automatic stay with respect to the [Injury & Damage Claims] / [Indemnification Claims] solely on the Terms and Conditions set forth in the Order Pursuant to 11 U.S.C. § 362(d)(1) Modifying the Automatic Stay as to Certain Claims for a Limited Purpose and Subject to Certain Conditions, entered by the Court on January [__], 2012 (the "**Order**") (ECF No. [__]):

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Order.

**AGREEMENT:**

6.    The Parties agree that the automatic stay shall be modified solely to the extent provided in the Order.

7.    The Claimant agrees to the following terms and conditions:

(a)    The Claimant may only seek to recover any liquidated final judgment or settlement or be paid, as applicable, with respect to the [Injury & Damage Claims] / [Indemnification Claims] solely from the available and collectible insurance coverage, if any, available under one or more of the Insurance Policies that cover the [Injury & Damage Claims] / [Indemnification Claims] (the "**Available and Collectible Coverage**");

(b)    The automatic stay shall not be modified to permit the Claimant to attempt to recover from any party for intentional conduct or punitive damages;

(c)    Any final judgment or settlement obtained by a Claimant shall be reduced by (i) the amount of any applicable deductible or self-insured retention under the applicable Insurance Policy, and (ii) any share of liability under the applicable Insurance Policy of any insolvent insurer or co-insurer; *provided, however*, that no reduction in a final judgment or settlement obtained by the Claimant on account of an insurer's or co-insurer's insolvency pursuant to Paragraph 7(c)(ii) shall in any way reduce or increase or otherwise affect the liability under the applicable Insurance Policy of any other insurer or co-insurer; and *provided further*, that the Claimant shall reserve all rights to pursue any such insolvent insurer or co-insurer, whether in such insurer's or co-insurer's insolvency proceeding, from any applicable guaranty fund, or otherwise; and

(d)    [Insert if [Injury & Damage Claims] / [Indemnification Claims] are 100% covered by Available and Collectible Coverage] Claimant shall waive, release, and discharge the Debtors, their estates, and their respective successors, predecessors, assigns, affiliates, officers, directors, shareholders, employees, attorneys, and agents from all claims, causes of action, suits, debts, obligations, liabilities, accounts, damages, defenses, or demands whatsoever,

known or unknown, that arise from the [Injury & Damage Claims] / [Indemnification Claims], except to the extent of the Available and Collectible Coverage;

[Insert if Self-Insured Retention or Deductible Is Applicable] Claimant shall proceed solely against the Available and Collectible Coverage and the automatic stay shall *not* be modified with respect to any deductible or self-insured retention, and the Claimant, or the Insurance Carrier, as applicable, shall comply with all deadlines for asserting a general unsecured claim.

8.     Nothing in this Agreement shall be construed as an agreement by the Debtors to provide assistance to or to cooperate with the Claimant in any way in the Claimant's efforts to [prosecute its Injury & Damage Claims] / [seek payment of its Indemnification Claim] or to recover from the Available and Collectible Coverage.

9.     Nothing in this Agreement shall be deemed or construed to impact, impair, affect, determine, release, waive, modify, limit, or expand: (i) the terms and conditions of any Insurance Policies; or (ii) any rights, remedies, defenses to coverage, and other defenses of any Insurance Carrier under or for any Insurance Policies (including the right of any Insurance Carrier to disclaim coverage), nor otherwise alter any Insurance Carrier's existing indemnity payment obligations. Furthermore, nothing in this Motion shall affect the existing obligations of any Insurance Carrier to pay defense fees or expenses or the existing arrangements for the payment thereof.

10.     This Agreement may not be modified, amended, or vacated other than by a signed writing executed by the Parties and approved by order of the Court.

11.     Each person who executes this Agreement on behalf of a Party hereto represents that he or she is duly authorized to execute this Agreement on behalf of such Party.

12.     This Agreement shall be governed by, and construed and enforced in accordance with the laws of the State of New York, without giving effect to the principles of conflict of laws thereof.

13.     The Parties hereby irrevocably and unconditionally agree that the Court shall retain exclusive jurisdiction to interpret, implement and enforce the provisions of this Agreement.

14.     This Agreement may be executed in multiple counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.  Evidence of execution of this Agreement may be exchanged by fax or by electronic transmission of a scanned copy of the signature pages or by exchange of an originally signed document, each of which shall be as fully binding on the party as a signed original.

15.     Pursuant to the Order, this Agreement shall be effective upon execution by

all the Parties and a filing of a notice of this Agreement with the Court, without any further order

of the Court.

Dated:  New York, New York
        _____, 2012


By:  _____          By:  _____

    Harvey R. Miller                       [Attorneys for Claimant]
    Stephen Karotkin                       [Address]
    Alfredo R. Pérez                       [City, State 00000]
    Stephen A. Youngman                    Telephone: []
    WEIL, GOTSHAL & MANGES LLP             Facsimile: []
    767 Fifth Avenue
    New York, New York 10153               Attorneys for Claimant
    Telephone: (212) 310-8000
    Facsimile: (212) 310-8007

    Attorneys for the
    Debtors and Debtors in Possession

**EXHIBIT "B"**

**List of Defense Counsel**

| Defense Counsel | Address of Defense Counsel |
|---|---|
| Adler, Murphy & McQuillen LLP | One North LaSalle Street<br>Ste 2300<br>Chicago, IL 60602 |
| Alimonti Law Offices, P.C. | 200 Mamaroneck Avenue<br>Third Floor<br>White Plains, NY 10601 |
| Anania, Baumgarten & Torricella | 100 Southeast Second Street<br>Suite 4300<br>Miami, FL 33131 |
| Anderson, Smyer, Riddle & Kuehler, LLP | 1604 8th Avenue<br>Fort Worth, TX 76104 |
| Barber, McCaskill, Jones & Hale, P.A. | 400 West Capitol Avenue<br>Little Rock, AR 72201 |
| Bennett, Bricklin & Saltzburg, LLC | 1601 Market Street<br>16th Floor<br>Philadelphia, PA 19103 |
| Blank & Rome LLP | One Logan Square<br>Philadelphia, PA 19103 |
| Boehl Stopher & Graves, LLP | AEGON Center<br>400 West Market Street<br>Suite 2300<br>Louisville, KY 40202 |
| Bonnie R. Cohen, Law Offices | 3096 Washington Street<br>San Francisco, CA 94115 |
| Burke, Sakai, McPheeters, Bordner, Iwanag & Este | 201 Merchant Street<br>Suite 2307<br>Honolulu, HI 96813 |
| Carmody MacDonald P.C. | 120 S. Central Avenue<br>Suite 1800<br>St. Louis, MO 63105 |
| Carnahan, Perry, Hanlon & Hudson, PLC | 722 East Osborn Road<br>Suite 400<br>Phoenix, AZ  85014 |
| Chasan, Leyner & Lamparello | 300 Harmon Meadow Blvd<br>Secaucus, NJ 07094 |
| Civerolo, Gralow, Hill & Curtis, PA | 20 First Plaza<br>Suite 500<br>P.O Drawer 887<br>Albuquerque, NM 87102 |
| Coddington, Hicks & Danforth | 555 Twin Dolphin Drive<br>Suite 300<br>Redwood City, CA 94065 |

| Defense Counsel | Address of Defense Counsel |
|---|---|
| Condon & Forsyth LLP | Times Square Tower<br>7 Times Square<br>New York, NY 10036 |
| Connell Foley LLP | 888 7th Avenue<br>9th Floor<br>New York, NY 10016 |
| Cook Yancy King and Galloway | Post Office Box 22260<br>Shreveport, LA 71120 |
| Cooper, White & Cooper LLP | 201 California Street<br>17th Floor<br>San Francisco, CA 94111 |
| Corr, Cronin, Michelson, Baumgardner & Preece LLP | 1001 Fourth Avenue<br>Suite 3900<br>Seattle, WA 98154 |
| Cotton, Bledsoe, Tighe & Dawson, PC | P.O. Box 2776<br>Midland, TX 79702-2776 |
| Cozen O'Connor | 1900 Market Street<br>Philadelphia, PA 19103 |
| Crenshaw, Dupree & Milam, LLP | 1500 Broadway<br>8th Floor<br>Lubbock, TX 79408 |
| Darger, Errante, Yavitz & Blau, LLP | 116 East 27th Street<br>12th Floor<br>New York, NY 10016 |
| Dean & Gibson, PLLC | 301 South McDowell Street<br>Suite 900<br>Charlotte, NC 28204 |
| Dehay & Elliston, LLP | 901 Main Street<br>Suite 3500<br>Dallas, TX 75202 |
| Debevoise & Plimpton LLP | 919 Third Avenue<br>New York, NY 10022 |
| Deutsch, Kerrigan & Stiles | P.O. Box 53078<br>Lafayette, LA 70505-53078 |
| Dudley, Topper and Feuerzeig, LLP | 1000 Frederkisberg Gade<br>P.O. Box 756 (Charlotte Amalie)<br>St. Thomas, VI 00804 |
| Dykema Gossett | 400 Renaissance Center<br>Detroit, MI 48243 |
| Dysart, Taylor, Lay, Cotter & McMonigle, PC | 4420 Madison Avenue<br>Kansas City, MO 64111 |

| Defense Counsel | Address of Defense Counsel |
|---|---|
| Ferguson, Schetelich & Ballew, PA | 1401 Bank Of America Center<br>100 South Charles Street<br>Baltimore, MD 21201 |
| Fiddler Gonzalez & Rodriquez, PSC | P.O. Box 363507<br>San Juan, PR 00936 |
| Fitzhugh & Mariani LLP | 155 Federal Street<br>Suite 1700<br>Boston, MA 02110 |
| Ford, Walker, Haggerty & Behar, LLP | One World Trade Center<br>27th Floor<br>Long Beach, CA 90831 |
| Fulton Eaglin | 2610 E. Arbor<br>Suite 100<br>Ann Arbor, MI 48103 |
| Gallagher Sharp | 1501 Euclid Ave<br>Cleveland, OH 44115 |
| Gladstone, Michel, Weisberg, Willner & Sloane, ALC | 4551 Glencoe Avenue<br>Suite 300<br>Marina Del Ray, CA 90292 |
| Grund Dagner, P.C. | 1660 Lincoln Street<br>Suite 2800<br>Denver, CO 80264 |
| Guglielmo, Marks, Schutte, Terhoeve & Love, LLP | 320 Somerulos Street<br>Baton Rouge, LA 70802 |
| Hardin, Jesson & Terry, PLC | 5000 Roger Avenue<br>Suite 500<br>Fort Smith, AR 72903 |
| Haynes & Boone | 2323 Victory Avenue<br>Suite 700<br>Dallas, TX 75219 |
| Higgs, Fletcher & Mack, LLP | 401 West A Street<br>Suite 2600<br>San Diego, CA 92112 |
| Hoy Trial Lawyers | 1608 Russell Street<br>Sioux Falls, SD 57104 |
| Hubert Bell, Jr. | 1907 North Lamar Blvd.<br>Austin, TX 78705 |
| Jackson Walker LLP | 901 Main Street<br>Suite 6000<br>Dallas, TX 75202 |
| Jones Walker Law Offices | 201 St. Charles Avenue<br>New Orleans, LA 70170 |

| Defense Counsel | Address of Defense Counsel |
|---|---|
| Jones, Gotcher & Bogan PC | 15 East 5th Street<br>Tulsa, OK 74103 |
| Keller, O'Reilly & Watson, PC | 242 Crossways Park<br>West Woodbury, NY 11797 |
| Kelly Hart & Hallman PC | 201 Main Street<br>Suite 2500<br>Fort Worth, TX 76102 |
| Kenney, Shelton, Liptak & Nowak, LLP | 14 Lafayette Square<br>Suite 510<br>Buffalo, NY 14203 |
| Kightlinger & Gray, LLP | 151 N. Delaware Street<br>Suite 600<br>Indianapolis, IN 46204 |
| Kohnen & Patton LLP, LLP | PNC Center<br>201 East Fifth Street<br>Suite 800<br>Cincinnati, OH 45202-4190 |
| Mills, Meyers & Swartling | 1000 Second Avenue<br>30th Floor<br>Seattle, WA 98104 |
| LeClair Ryan | 44 Montgomery Street<br>18th Floor<br>San Francisco, CA 94104 |
| Leitner, Williams, Dooly & Napolitan, PLLC | 801 Broad Street<br>Third Floor<br>Chattanooga, TN 37402 |
| Lester, Schwab, Katz & Dwyer | 120 Broadway<br>New York, NY 10271 |
| Lightfoot, Franklin & White, LLC | 400 20th Street North,<br>The Clark Bldg<br>Birmingham, AL 35203 |
| Locke Lord Bissell & Liddell LLP | 2200 Ross Avenue<br>Suite 2200<br>Dallas, TX 75201 |
| Markow Walker PA | Po Box 13669<br>Jackson, MS 39236-3669 |
| Miller & Brown, LLP | 400 South Ervay Street<br>Dallas, TX 75201 |
| Mintz, Levin, Cohn, Ferris, Glovsky, and Popeo | One Financial Center<br>Boston, MA 02212 |
| Morris & Morris | 801 East Main Street<br>Suite 1200<br>Richmond, VA 23219 |

| Defense Counsel | Address of Defense Counsel |
|---|---|
| Morrison Mahoney LLP | 250 Summer Street<br>Boston, MA 02210 |
| Neal & Harwell, PLC | 150 Fourth Avenue North<br>Nashville, TN 37219-2498 |
| Nelsen & Lee, PC | 1010 Market Street<br>Suite 500<br>St Louis, MO 63101 |
| Niles Barton and Wilmer, LLP | 111 South Calvert Street<br>Suite 1400<br>Baltimore, MD 21202 |
| Northcraft Bigby & Owada | 720 Olive Way<br>Suite 1905<br>Seattle, WA 98101 |
| Pappas, Cleary, O'Connor, Fildes, Secaras, PC | 900 W. Jackson Blvd<br>Suite Six West<br>Chicago, IL 60607 |
| Peddicord, Wharton, Spencer, HooK, Barron & Wegman, LLP | P. O. Box 9130<br>Des Moines, IA 50306 |
| Perry & Westbrook | 1701 West Charleston Street<br>Las Vegas, NV 89102 |
| Petkoff & Feigelson | 305 Washington Avenue<br>Memphis, TN 38103 |
| Phillips Murrah, PC | 101 North Robinson<br>Thirteenth Floor<br>Oklahoma City, OK 73102 |
| Pietragallo, Gordon, Alfano, Bosick & Raspanti, LLP | One Oxford Centre<br>Pittsburgh, PA 15219 |
| Pretzel & Stouffer, Chartered | One South Wacker Drive<br>Suite 2500<br>Chicago, IL 60606 |
| Ray, Valdez,  McChristian & Jeans, PC | 5822 Cromo Drive<br>El Paso, TX 79912 |
| Rincon Law Group, PC | 1014 N. Mesa<br>Suite 200 El Paso, TX 79902 |
| Robert E. O'Connell | 1499 W. Palmetto Park Road<br>Suite 416<br>Boca Raton, FL 33486 |
| Roeca, Luria & Hiraoka, LLP | 900 Davies Pacific Center<br>841 Bishop St<br>Honolulu, HI 96813 |
| Roetzel & Andress | 222 South Main Street<br>Akron, OH 44308 |

| Defense Counsel | Address of Defense Counsel |
|---|---|
| Rumberger, Kirk & Caldwell, PA | Lincoln Plaza<br>Suite 1400<br>300 South Orange Avenue<br>Orlando, FL 32801 |
| Rutherford & Christie, LLP | 369 Lexington Avenue<br>8th Floor<br>New York, NY 10017 |
| Rutherford & Christie, LLP | 225 Peachtree Street NE<br>Suite 1750 South Tower<br>Atlanta, GA 30303 |
| Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, LLP | 150 Fayetteville Street<br>Suite 2300<br>Raleigh, NC 27601 |
| Swanson, Martin & Bell, LLP | One IBM Plaza<br>330 North Wabash<br>Suite 3300<br>Chicago, IL 60611 |
| The Rosen Law Firm | 1000 SW Broadway<br>Suite 1220<br>Portland, OR 97205 |
| Thompson & Knight | 1722 Routh Street<br>Suite 1500<br>Dallas, TX 75201 |
| Tucker Ellis & West LLP | 925 Euclid Avenue<br>Cleveland, OH 44115 |
| Vetter & White | 50 Park Row West<br>Suite 109<br>Providence, RI 02903 |
| Walker, Bright, PC | 100 North Central Expressway<br>Suite 800<br>Richardson, TX 75080 |
| Wesierski & Zurek LLP | One Corporate Park<br>Second Floor<br>Irvine, CA 92606 |
| White & Wiggins, LLP | 901 Main Street<br>Suite 6200<br>Dallas, TX 75202 |
| Wicker, Smith, O'Hara, McCoy & Ford | 515 East Las Olas Boulevard<br>Suite 1400<br>Fort Lauderdale, FL 33302 |
| Worthe, Hanson & Worthe | 1851 East First Street<br>Ninth Floor<br>Santa Ana, CA 92705 |

7

# EXHIBIT B

## EXHIBIT A

## ALLOCATION AGREEMENT WITH RESPECT TO
## CERTAIN PROPERTY DAMAGE, BUSINESS INTERRUPTION
## LOSS AND INSURANCE SUBROGATION CLAIMS

THIS ALLOCATION AGREEMENT ("Agreement") is entered into with respect to property damage, business interruption loss and insurance subrogation claims arising out of the hijacking and subsequent crashes of American Airlines Flight 11 and United Air Lines Flight 175 on September 11, 2001. It is made by and among (i) United States Aviation Underwriters, Inc. ("USAU"), as manager of United States Aircraft Insurance Group ("USAIG"), the lead insurer of United Air Lines, Inc. (together with its parents, subsidiaries and affiliates "United"), (ii) Global Aerospace Underwriting Managers, Ltd. ("Global"), the lead insurer of American Airlines, Inc. (together with its parents, subsidiaries and affiliates "American"), and (iii) Amlin Underwriting Ltd. ("Amlin") as managing agent on behalf of Lloyd's Syndicate 824 which was the lead insurer of the excess aviation liability insurance policy issued to Globe Aviation Services Corporation (together with its parents, subsidiaries and affiliates "Globe"), and If P & C Insurance Ltd (publ) ("If") and XL Insurance Company Limited (formerly known as XL Insurance (Europe) Ltd.) ("XLE") as excess general liability insurers of Securitas AB and its subsidiaries including Globe (collectively "Globe's Insurers"), on behalf of themselves and their respective co-insurers.[1]

## WITNESS:

WHEREAS, the parties hereto are presently involved in the negotiation of a settlement agreement, achieved through mediation, relating to all known property damage, business interruption loss and insurance subrogation claims made against their insureds arising out of the terrorist-related air crashes into each of the North Tower and South Tower of the World Trade Center on September 11, 2001 (the "Property Damage Settlement") except claims by (a) World Trade Center Properties LLC and its affiliates, (b) Cantor Fitzgerald & Co. and its affiliates brought in a lawsuit captioned *Cantor Fitzgerald & Co., et al. v. American Airlines, Inc., et al.*, No. 04CV07318 (AKH) (the "Cantor Claims"), and (c) Cedar & Washington, LLC allegedly arising under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 *et seq.*; said foregoing claims referenced in (a)-(c) being hereinafter referred to collectively as the "Remaining Known Claims"; and

---

[1] Employers Insurance Company of Wausau provided primary and excess general liability insurance to Securitas AB and its subsidiaries that has been exhausted by prior payments. National Union Fire Insurance Company of Pittsburgh (through AIG Aviation) provided primary aviation liability insurance to Globe that also has been exhausted by prior payments.

WHEREAS, a mediation on a claim-by-claim basis of property damage claims involving 80 plaintiffs and 19 complaints alleging in excess of $6 billion in damages would have been unproductive and unlikely to achieve any resolution, the parties hereto negotiated share allocations based on an analysis of all the property damage, business interruption loss and insurance subrogation claims asserted in the 9/11 litigation, including both the claims covered by the Property Damage Settlement and the Remaining Known Claims; and

WHEREAS, the parties hereto have agreed to share in the cost of the Property Damage Settlement by allocating 48% of the settlement amount to American's insurers and co-insurers (the "American Insurers"), 12% of the settlement amount to the insurers and co-insurers of Globe (the "Globe Insurers"), and 40% of the settlement amount on a combined basis to the insurers and co-insurers of United (the "United Insurers") and Huntleigh (the "Huntleigh Insurers"); and

WHEREAS, the parties have not as yet been able to effect a resolution of the Remaining Known Claims; and

WHEREAS, the parties hereto, for themselves and their co-insurers, wish to provide that the 48/12/40 allocation referenced above shall apply as originally intended not only to the Property Damage Settlement but also to the Remaining Known Claims even if such claims are settled and/or litigated separately; and

WHEREAS, because it is contemplated that upon approval and consummation of the Property Damage Settlement the policy limits payable by Huntleigh's Insurers on behalf of Huntleigh will be exhausted it has been agreed, assuming consummation of the Property Damage Settlement and payments by Huntleigh's Insurers exhausting Huntleigh's coverage limits, that United's Insurers will thereafter pay 40% of the amounts necessary to settle or discharge judgments rendered with respect to the Remaining Known Claims; and

WHEREAS, American and Globe, as principals, and American's Insurers and Globe's Insurers intend by this Agreement to resolve between themselves, fully and finally, all contractual and common law indemnity issues of any kind whatsoever for all bodily injury and property damage directly or indirectly arising out of the hijacking and subsequent crash of American Airlines Flight 11 on September 11, 2001.

NOW, THEREFORE, for good and valuable consideration including their mutual promises and releases, their contributions to the Property Damage Settlement and the payments due or potentially due hereunder, the parties hereto have entered into this Agreement as follows:

1.      Incorporation.  The provisions of the above WHEREAS clauses, including the definitions of capitalized terms, are incorporated herein and made a part hereof.

2

2.      Conditions Precedent.  To be effective, this Agreement requires (a) the consent and approval of United, American, and Globe, (b) the consent and approval of each of the co-insurers of United, American and Globe, and (c) Court approval and consummation of the Property Damage Settlement, pursuant to which Huntleigh's Insurers pay their remaining policy limits on behalf of Huntleigh.  For the avoidance of doubt, the fulfillment of each of the foregoing conditions precedent is required by the parties hereto because they wish to obtain the consent of their insureds even though their insureds are assuming no monetary obligations hereunder although American and Globe are hereby resolving indemnity issues as between themselves in consideration for the provisions of this Agreement.  If any of the conditions precedent required herein does not occur, this Agreement shall become null and void, but in such event the parties hereto shall negotiate in good faith to reach a substitute agreement that takes into account the effect of the unfulfilled condition(s) precedent.

3.      Individual Liability (Not Joint and Several).  The parties hereto recognize and agree that each has co-insurers that are responsible for a proportion of the payments that may become due hereunder.  Each of American's Insurers, Globe's Insurers and United's Insurers shall provide the other with a list of co-insurers and the proportionate share of liability for payments due hereunder to be provided by each.  While the terms of this Agreement speak collectively of American's Insurers, Globe's Insurers and United's Insurers with respect to payments that may become due, it is nonetheless the agreement of the parties hereto that each of the parties and their co-insurers shall be severally and individually liable for their respective proportionate share of payments due and that none of the parties hereto nor their other co-insurers will be responsible for making payments due on behalf of, or as a result of a default by, an insurer or a co-insurer that does not pay its proportionate share of payments due hereunder.[2]

4.      No Modification of Insurance Contracts.  It is understood and agreed that nothing herein shall modify, novate or otherwise alter the terms of the contracts of insurance entered into between American, United, Globe and Huntleigh and their respective insurers.

5.      Allocation.

a.      The parties hereto acknowledge and agree that Huntleigh's insurance limits will be exhausted by the payment thereof in respect of the Property Damage Settlement, assuming it is approved by the Court, not subject to further appeal, and has been consummated.

b.      Based on the assumption set forth in subsection (a) of this Section, the parties hereto agree that the amount payable with respect to any settlement or

---

[2] For the avoidance of doubt, however, nothing in this clause shall affect the joint and several liability of the member companies of the US Aircraft Insurance Group in respect of their several share of such payments.

3

discharge of judgment relating to the Remaining Known Claims shall be allocated among and paid by American's Insurers (48%), Globe's Insurers (12%)[3] and United's Insurers (40%). This Section applies to the allocation of responsibility for property damage settlements entered into by, or judgments rendered against, American, Globe or United. Nothing in this Agreement shall obligate American's Insurers, Globe's Insurers or United's Insurers to make any payment for any settlement entered into by, or judgment rendered against, any person or entity other than American, Globe or United in respect of any Remaining Known Claim.

        c.    The parties hereto previously entered into interim funding agreements with respect to personal injury and wrongful death cases arising out of the terrorist-related air crashes of September 11, 2001. Under those agreements, payment of settlements of claims associated with American Flight 11 have been allocated ▆▆▆ to American's Insurers and ▆▆▆ to Globe's Insurers, while claims relating to the crash of United Flight 175 have been allocated ▆▆▆ to Huntleigh's Insurers and ▆▆▆ to United's Insurer's. The parties hereto, and their respective insureds, confirm that the interim payments made with respect to previously resolved personal injury and wrongful death cases shall constitute a final allocation not subject to modification or renegotiation and that, based on the assumption set forth in subsection (a) of this Section, with respect to subsequently resolved wrongful death cases (whether by settlement or judgment) amounts payable for wrongful death claims arising out of the crash of American Flight 11 will continue to be allocated ▆▆▆ to American's Insurers and ▆▆▆ to Globe's Insurers while claims arising out of the crash of United Flight 175 will be paid in their entirety by United's Insurers.

        d.    Should any future claims not presently asserted but arising or allegedly arising out of the crash of American Flight 11 and/or United Flight 175 be brought against American, Globe or United then, in such event, the parties hereto will negotiate in good faith to arrive at an allocation of the payments, if any, that are made to settle or discharge judgments with respect thereto; provided, however, that the allocation reflected in this Agreement may act as a guide but shall not be binding on the parties hereto given that the facts and circumstances relating to any such claims are not presently known.

      6.    <u>Provisions Relating to the Remaining Known Claims Other Than the Cantor Claims</u>.

        a.    The allocation of payments set forth in this Agreement shall apply to payments of settlements or the discharge of judgments, but not to defense costs

---

[3] With regard to the Cedar & Washington claim only, it is understood and agreed that Amlin and its co-insurers subscribing to the excess aviation liability policy will be liable for 100% of the Globe Insurers' 12% share up to $1,000,000, and If and XLE shall have no liability unless Globe's allocable share in respect of this claim is in excess of this amount by virtue of a specific deductible in their respective policies.

including, but not limited to, legal fees, expert costs, discovery expenses and court costs ("Defense Costs"). Each of American's, Globe's, United's and Huntleigh's Insurers shall continue to pay (subject to policy provisions) for their respective insured's legal counsel and for counsel employed to represent their own interests but, in the event a judgment is rendered and an appeal bond is required, the cost of any appeal bond obtained shall be shared among American's Insurers (48%), Globe's Insurers (12%) and United's Insurers (40%) if all consent to an appeal going forward.

      b.     All existing joint defense arrangements will continue in place and counsel will continue to share information regarding all pending litigation that is the subject of this Agreement and to agree upon a common strategy for the resolution of such litigation. In addition, and not by way of limitation, any settlement discussions will include counsel for each of the parties hereto except that Huntleigh's Insurers' counsel shall not participate since their policy limits will have been exhausted. For the allocations set forth in this Agreement to apply, any settlement must be approved in writing by those parties hereto contributing to its payment.

      c.     As a condition to becoming effective, any settlement of the Remaining Known Claims must contain a full and complete release of all claims against the parties hereto, their co-insurers and their insureds and must be approved by the United States District Court for the Southern District of New York in a final order, no longer subject to appellate review, confirming that the settlement is consistent with ATSSSA, that all amounts paid with respect to the settlement will be credited against the policy limits of the respective Insurers for American, Globe and United in the amounts paid by them, that the amounts paid by each of them will be credited against the limits of liability under ATSSSA applicable to their respective insureds, dismissing the settled claims with prejudice, and entering a Rule 54(b) final judgment in favor of the Aviation Defendants on each of those claims.

      7.    <u>Provisions Relating to the Cantor Claims.</u>

      a.     American's Insurers shall pay 100% of any judgment or settlement of the Cantor Claims in the first instance. Said insurers will also be responsible (subject to policy provisions) for the payment of all Defense Costs for American. In the event a judgment is rendered, and an appeal bond is required, the cost of any appeal bond obtained shall be paid entirely by the insurers of the entities against whom the judgment is rendered.

      b.     Subject to the provisions of subsection (c) hereof, and Section 8 relating to the parties' intent to neither alter nor impair the ATSSSA cap otherwise applicable to United, American and Globe, and the conditions set forth in Section 6(c), United's Insurers hereby agree to reimburse American's Insurers for 40% of the American share and Globe's Insurers agree to reimburse American's Insurers for 12% of the American share of (i) any settlement of the Cantor Claims to which the United

Insurers and Globe Insurers consent or, (ii) if no settlement can be agreed to, any judgment rendered for the Cantor Claims.[4]

        c.        The amount of any re-imbursement required by Section 7(b)(i) or (ii) shall be maintained by United's Insurers and Globe's Insurers in separate accounts mutually acceptable to the lead insurers of United, Globe and American. Said funds shall remain in such accounts unless required to satisfy a 9/11 related judgment against United and/or Globe that cannot be satisfied by their insurers from any other available insurance. In such event, the amount needed to satisfy said judgment (including, if necessary, interest earned on the shared account) shall be released and returned to United's Insurers and/or Globe's Insurers to the extent necessary to allow them to satisfy said judgment without having to make payments in excess of United's and/or Globe's otherwise applicable ATSSSA limits. If no such judgment has been entered, or if such judgment has been satisfied without exhausting the funds in the separate accounts, the aforesaid funds (including interest earned on the shared account less the cost of managing the account) shall be released to American's Insurers upon the entry of an order, subject to no further appeal, either:

        (i) acknowledging the final resolution of all Remaining Known Claims (provided, however, that as of the later of (x) the date the order becomes final and no longer subject to appeal or (y) February 1, 2013 (the "Release Date") no New Claims as defined in the Settlement Agreement are pending against United and/or Globe, as the case may be, and at least $100 million remains available to United, and/or at least $20 million remains available to Globe, under the limits of liability set forth in Section 408 (a)(1) of ATSSSA), or

        (ii) holding that the amount of reimbursement required by this Section can be properly credited against United's and/or Globe's limits of liability established by Section 408 (a)(1) of the ATSSSA.

If the order referenced in Section 7(c)(ii) has not been entered and if either (a) New Claims are pending against United or Globe as of the Release Date or (b) the amount remaining available to United and/or Globe under their ATSSSA caps as of the Release Date is less than $100 million or $20 million, respectively, then the parties shall negotiate in good faith concerning the circumstances and the extent to which the funds in the separate accounts shall be released to American's Insurers. American's Insurers shall

---

[4] In the event that Cantor is subsequently permitted by a final court ruling to assert claims directly against Globe, then Globe's Insurers shall join with American's Insurers and shall advance 20% of any payments to be made in accordance with Section 7(b) subject to their pro rata share of the 40% reimbursement by United's Insurers as provided herein and subject to the all of the same conditions of this Section 7 as apply to American's Insurers except as regards their collective percentage share.

indemnify United's Insurers and Globe's Insurers from and against all Defense Costs arising from any challenge to any order referenced in subsections (c)(i) and (c)(ii) hereof.

d.     In the event that American actually receives any reimbursements from United and/or Globe pursuant to Section 7(b) and (c) in respect of payments to Cantor by American that previously have been credited against American's liability cap under ATSSSA, the remaining available amounts under American's liability cap shall be correspondingly refreshed and reinstated by the amounts of reimbursement actually received.

8.     <u>ATSSSA</u>.  Nothing contained herein is intended to alter or limit the applicability of the liability cap contained in ATSSSA or to require any insurer of American, Globe, Huntleigh or United to pay any amount in excess of its policy limits. To the contrary, this Agreement reflects the parties' desire to insure the maximum and faithful application of the liability limitations contained in ATSSSA, and all parties hereto shall vigorously resist any attempt by any third party to challenge the application of the allocation formula set out herein to any of the Remaining Known Claims.  In no event shall the parties' entry into this Agreement be deemed to be a waiver, rejection or modification of any of the liability cap provisions of ATSSSA.  For the avoidance of doubt, nothing contained herein shall be construed to prejudice the rights of any holder of any Remaining Known Claim to the insurance limits of American, United or Globe as provided in Section 408(a)(1) of ATSSSA that otherwise would be available but for this Allocation Agreement.

9.     <u>Confidentiality</u>.  The parties hereto, their co-insurers and their insureds shall keep the terms of this Agreement confidential, except as may be required to comply with applicable law (including fiduciary obligations) or court order.  Notwithstanding, it is agreed that the terms hereof may be disclosed by the parties hereto, their co-insurers or insureds to, as may be necessary or convenient, the Court approving settlement of the Remaining Known Claims or the Property Damage Settlement and to their respective officers, directors, members, reinsurers, legal counsel, accountants or financial consultants.  The parties hereto shall endeavor to obtain confidentiality undertakings similar to those contained in this Section from any individual, entity or court to whom the terms and conditions of this Agreement are disclosed.

10.     <u>Choice of Law</u>.  This Agreement shall be governed by and construed in accordance with the substantive laws of the United States and the State of New York (with federal law to control in the event of contradiction), exclusive of laws relating to conflicts of laws.

11.     <u>Dispute Resolution</u>.  Any dispute related to or arising out of this Agreement (an "Agreement Dispute") shall be decided by the Honorable Alvin K. Hellerstein or his designated successor.  Judge Hellerstein (or his designated successor) shall be requested to retain jurisdiction over the settlement or resolution by judgment of the Remaining Known Claims for the purpose of enforcement of this Agreement and the resolution of any Agreement Dispute.  The parties hereto agree to submit to the personal

and subject matter jurisdiction of the United States District Court for the Southern District of New York for the resolution of any Agreement Dispute, and expressly waive any right to challenge jurisdiction or venue. In the event Judge Hellerstein (or his designated successor) determines that federal subject matter jurisdiction is lacking over any Agreement Dispute, the Supreme Court of the State of New York, County of New York shall in such event be the exclusive forum for resolution of such Agreement Dispute. The parties hereto agree to accept service of process with respect to any Agreement Dispute by any delivery method offered by the United States Postal Service, Federal Express or UPS that provides for, and produces, proof of delivery.

12. **Entire Agreement.** This Agreement constitutes the entire agreement among and between the parties hereto with respect to the matters addressed herein. It may be amended only by a writing signed by all parties hereto making specific reference to this Section of this Agreement.

13. **Binding Effect.** This Agreement shall bind and inure to the benefit of the parties hereto, their co-insurers, their insureds and their respective present and former officers, directors, employees, attorneys, owners, predecessors, successors, parents, subsidiaries, members, affiliates and assigns.

14. **Counterparts.** This Agreement may be signed in multiple counterparts and shall become binding once, taken together, a counterpart hereof has been signed by each of the parties hereto.

WHEREFORE, having obtained the consent, approval and joinder (as applicable) of their co-insurers and insureds, the parties hereto have executed this Agreement on the date(s) set forth below for the purposes contained herein and with the intention of being legally bound hereby.

United States Aviation Underwriters, Inc. as Managers of United States Aircraft Insurance Group

By: _____

Date: February 24, 2010

Title: Senior Vice-President

8

Global Aerospace Underwriting
Managers, Limited

By: _____

Date: Feb. 24, 2010

Title: Sr. Vice President


Amlin Underwriting Ltd.

By: _____

Date: _____

Title: _____


If P & C Insurance Ltd (publ)

By: _____

Date: _____

Title: _____


XL Insurance Company Limited
(formerly known as XL Insurance
(Europe) Ltd.)

By: _____

Date: _____

Title: _____

9

Global Aerospace Underwriting
Managers, Limited

By:_____

Date: _____                Title:_____


Amlin Underwriting Ltd.

By:_____

Date: 24ᵗʰ FEBRUARY 2010                Title: CLAIMS MANAGER .


If P & C Insurance Ltd (publ)

By:_____

Date: _____                Title:_____


XL Insurance Company Limited
(formerly known as XL Insurance
(Europe) Ltd.)

By:_____

Date: _____                Title:_____

9

Global Aerospace Underwriting
Managers, Limited

By:_____

Date: _____          Title:_____


Amlin Underwriting Ltd.

By:_____

Date: _____          Title:_____


If P & C Insurance Ltd (publ)

By: _____

Date: 24th February 2010          Title: TIMO VUORINEN          ANTTI KARPPI
                                        E.V.P.                  S.V.P.


XL Insurance Company Limited
(formerly known as XL Insurance
(Europe) Ltd.)

By:_____

Date: _____          Title:_____

9

Global Aerospace Underwriting
Managers, Limited

By:_____

Date: _____ Title:_____


Amlin Underwriting Ltd.

By:_____

Date: _____ Title:_____


If P & C Insurance Ltd (publ)

By:_____

Date: _____ Title:_____


XL Insurance Company Limited
(formerly known as XL Insurance
(Europe) Ltd.)

By:_____

Date: 24ᵗʰ February 2010     Title: CASUALTY PRACTICE LEADER

9

Accepted and agreed: that
Global may enter
into this Allocation
Agreement on behalf
of American
Date: _____ February 24, 2010

American Airlines, Inc.

By: _Kathryn Koorenny_

Title: _Associate   General Counsel_

Globe Aviation Services
Corporation on behalf of itself and
all affiliated companies

By: _____

Date: _____        Title: _____

11

Accepted and agreed:

American Airlines, Inc.

By:_____

Date: _____        Title:_____


Globe Aviation Services
Corporation on behalf of itself and
all affiliated companies

By: _Kevin Handly_

Date: _2-24-2010_        Title: _PRESIDENT_

10

# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                                  :

IN RE SEPTEMBER 11 LITIGATION       :  21 MC 101 (AKH)

                                                  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                                  :

CANTOR FITZGERALD & CO., et al.,      :
                                                  :

                          Plaintiffs,     :  04-CV-7318 (AKH)
               v.                       :

                                                  :

AMERICAN AIRLINES, INC., and AMR    :
CORP.,                                         :
                        Defendants.    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## RELEASE OF CLAIMS

WHEREAS, Cantor Fitzgerald & Co., Cantor Fitzgerald Associates, L.P., Cantor Fitzgerald Brokerage, L.P., Cantor Fitzgerald Europe, Cantor Fitzgerald International, Cantor Fitzgerald Partners, Cantor Fitzgerald Securities, Cantor Fitzgerald, L.P., Cantor Index Limited, CO2e.com, LLC, eSpeed Government Securities, Inc., eSpeed, Inc., eSpeed Securities, Inc., and TradeSpark, L.P. (hereafter, collectively "Cantor") brought an action captioned *Cantor Fitzgerald & Co., et al. v. American Airlines, Inc., et al.*, 04 CV 07318 (AKH) (hereafter, the "Cantor Lawsuit"), against American Airlines, Inc. and AMR Corporation. (collectively "American") alleging property damage and business interruption losses arising from the hijacking and subsequent crash on September 11, 2001 of American Airlines Flight 11, pursuant to the Air Transportation Safety and System Stabilization Act, 49 U.S.C. § 40101 et seq. (hereafter, "ATSSSA");

WHEREAS, Cantor and American have agreed to a Settlement Agreement dated as of December 12, 2013 (the "Settlement Agreement");

WHEREAS, the Settlement Agreement defines the Aviation Defendants in the Master Docket as American Airlines, Inc.; AMR Corporation.; United Airlines, Inc.; United Continental Holdings (formerly known as UAL Corporation); Continental Airlines, Inc.; US Airways, Inc.; US Airways Group, Inc.; Colgan Air, Inc.; Globe Aviation Services Corporation; Globe Airport Security Services, Inc.; Huntleigh USA Corporation; The Boeing Company; Massachusetts Port

Authority; Burns International Services Company, LLC (formerly known as Burns International Services Corporation); Burns International Security Services Company, LLC (formerly known as Burns International Security Services Corporation); Pinkerton's, LLC (formerly known as Pinkerton's, Inc.); and Securitas AB.

WHEREAS, the Settlement Agreement provides for payment to Cantor by the Contributing Insurers of the Settlement Amount set forth therein; and

WHEREAS, pursuant to an Allocation Agreement entered into in connection with the Property Damage Settlement of February 23, 2010, Contributing Insurers for American, Globe Aviation Services Corporation, United Airlines, Inc. and United Continental Holdings (formerly known as UAL Corporation) will contribute to the payment of the Settlement Amount;

NOW, THEREFORE:

1.     Cantor Fitzgerald & Co., Cantor Fitzgerald Associates, L.P., Cantor Fitzgerald Brokerage, L.P., Cantor Fitzgerald Europe, Cantor Fitzgerald International, Cantor Fitzgerald Partners, Cantor Fitzgerald Securities, Cantor Fitzgerald, L.P., Cantor Index Limited, CO2e.com, LLC, eSpeed Government Securities, Inc., eSpeed, Inc., eSpeed Securities, Inc., and TradeSpark, L.P. and each of them, on their own behalf and on behalf of each of their respective successors and assigns, hereby waive, discharge and release American, the other Aviation Defendants and the Contributing Insurers, together with their present and former employees, agents, attorneys, insurers, predecessors, successors, parents, subsidiaries, affiliates, members, subcontractors, suppliers, heirs, executors, administrators and assigns, from the claims specified herein, which include any and all claims, actions, causes of action, suits, damages, fees (including attorneys' fees) and demands that have been, are now, or could have been asserted in the Cantor Lawsuit, or that in any way involve, relate to, or arise out of, in whole or in part, the Events of September 11, 2001 (as defined in the Settlement Agreement), or that arise under ATSSSA, including related claims of Cantor's insurers or reinsurers (in their capacity as such) for all or any portion of the damages allegedly suffered by Cantor or any other person claiming by, through or on behalf of Cantor for such damages.

2.     This Release shall not become effective with respect to any Defaulting Contributing Insurer (as defined by the Settlement Agreement), unless and until such Defaulting Contributing Insurer shall have satisfied its payment obligations as set forth in paragraphs 2 and 3 of the Settlement Agreement.

3.    Nothing in this Release shall be deemed to waive, release or discharge any rights that Cantor has pursuant to or arising from the Settlement Agreement or any document executed or delivered in connection with the Settlement Agreement.

Dated:          December __, 2013

Cantor Fitzgerald & Co., Cantor Fitzgerald Associates, L.P., Cantor Fitzgerald Brokerage, L.P., Cantor Fitzgerald Europe, Cantor Fitzgerald International, Cantor Fitzgerald Partners, Cantor Fitzgerald Securities, Cantor Fitzgerald, L.P., Cantor Index Limited, CO2e.com, LLC, eSpeed Government Securities, Inc., eSpeed, Inc., eSpeed Securities, Inc., and TradeSpark, L.P.

By: _____

Name: _____

Title: _____

# EXHIBIT D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
          :

IN RE SEPTEMBER 11 LITIGATION     :    21 MC 101 (AKH)
          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
          :

CANTOR FITZGERALD & CO., et al.,    :
          :

                    Plaintiffs,    :    04-CV-7318 (AKH)
       v.            :
          :

AMERICAN AIRLINES, INC., and AMR   :
CORP.,               :
             Defendants.   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## CERTIFICATE OF DESTRUCTION

[**Insert Settling Party**], by and through the undersigned, hereby certifies that it has complied with Section 9 of the Settlement Agreement and Release of Claims dated as of December 12, 2013 by and between the parties thereto (the "Settlement Agreement"), entered in connection with the above-captioned litigation, by electing to destroy the Discovery Materials (as defined in the Settlement Agreement) in its possession.


Dated: _____

**[Insert Settling Party]**


By: _____


Name:_____


Title:_____